[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13287

_____

D.C. Docket No. 1:88-cv-02406-FAM

MICHAEL POTTINGER, et al.,

Plaintiffs,

DAVID PEERY,

Plaintiff - Appellant,

versus

CITY OF MIAMI,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 10, 2015)

Before JORDAN and JULIE CARNES, Circuit Judges, and GOLDBERG,* Judge.

JORDAN, Circuit Judge:

_____

* Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

In the hierarchy of law, language is king. Words matter in constitutions, treaties, statutes, rules, cases, and contracts. And, as seen in this case, they matter in civil rights settlement agreements which, once judicially approved, become consent decrees.

David Peery, on behalf of a class, asks us to award his counsel attorneys' fees for opposing modifications proposed by the City of Miami to such an agreement. We decline to do so because the parties' agreement limited future attorneys' fees to enforcement proceedings. Given that modification proceedings do not trigger an award of attorneys' fees under the agreement, we affirm the district court's denial of fees.

## I

This case has a prolonged history. We summarize only what is necessary to provide context for our analysis.

More than 25 years ago, Michael A. Pottinger, as representative of a class of homeless persons, filed a lawsuit against the City of Miami under 42 U.S.C. § 1983, alleging that the City's police department had "a custom, practice and policy of arresting, harassing and otherwise interfering with homeless people for engaging in basic activities of daily life . . . in the public places where they are forced to live." *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1554 (S.D. Fla. 1992). Mr. Pottinger sought an injunction against the City to prohibit its police from arresting

homeless persons who engaged in "life-sustaining conduct" in public and from seizing and destroying their property. *See id.* The district court found the City liable and granted Mr. Pottinger's request for injunctive relief. *See id.* at 1584 (detailing the specific relief granted).

The City appealed, challenging the basis and scope of the injunction. In December of 1994, following oral argument, we remanded the case to allow the district court to "issue appropriate clarifying language to guide the [C]ity in its determination of the scope of its duties under the injunction, and [to] consider whether its injunction should be modified in light of . . . events [that transpired subsequent to its order granting the injunction]." *Pottinger v. City of Miami*, 40 F.3d 1155, 1157 (11th Cir. 1994). On remand, the district court conducted an evidentiary hearing and ruled that the injunction would remain in effect because the circumstances on the ground had not changed significantly. *See* D.E. 360 at 11.

Once again the City appealed. We heard oral argument in January of 1996, and instructed the parties to try to settle their dispute. *See Pottinger v. City of Miami*, 76 F.3d 1154 (11th Cir. 1996). After negotiating for nearly two years, the parties entered into a settlement agreement which the district court subsequently approved. *See* D.E. 397 (joint motion to approve settlement agreement); D.E. 398 (final order approving settlement agreement, retaining jurisdiction, and dismissing

the case). The district court's approval of the parties' agreement functioned as the equivalent of the entry of a consent decree. *See Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003) ("A formal consent decree is unnecessary because the . . . explicit retention of jurisdiction over the terms of the settlement [is] the 'functional equivalent of an entry of a consent decree.'") (citation omitted).[1]

As part of their settlement, the parties agreed that the lawsuit and then-pending appeals would be dismissed "without costs and attorneys['] fees (except such attorneys['] fees as are specifically provided for [in the agreement])[.]" D.E. 464-1 at 2. Paragraph 25 of the agreement sets forth the parties' resolution of attorneys' fees:

> [T]he City shall pay to the Plaintiffs' attorneys the sum of $900,000 . . . as and for attorneys['] fees and costs, . . . as a part of the comprehensive settlement to be adopted through the implementation of this Settlement Agreement. Additionally, said payment is made *to conclude all claims for attorneys['] fees in the underlying litigation*, including pending appeals, and in regard to *all other matters connected with this Settlement Agreement, except enforcement proceedings, should such become necessary after non-binding mediation as provided below*.

*Id.* at 13 (emphasis added).

---

[1] We therefore refer to the document approved by the district court interchangeably as the settlement agreement or consent decree, and draw upon cases dealing with both settlement agreements and consent decrees. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 237 F.3d 1273, 1276 (11th Cir. 2001) (citing consent decree case in appeal involving interpretation of settlement agreement approved by district court).

Like paragraph 25, paragraph 25a of the agreement, entitled "Enforcement/Mediation," requires the parties to submit to non-binding mediation prior to initiating an action to enforce the settlement agreement:

> *Prior to any party seeking court enforcement* against any other party to this Settlement Agreement, the parties *shall attempt to informally mediate a dispute in a non-binding mediation.* . . . This *requirement to mediate prior to seeking court enforcement* shall not prevent a party from seeking immediate court enforcement if it clearly appears from specific facts shown by aff[i]davit that immediate and irreparable injury, loss or damage will result to the aggrieved party before the aggrieved party and the other party can conduct mediation[.]

*Id.* at 13–14 (emphasis added).

Paragraph 30, entitled "Modification," states that the settlement agreement "may be modified by written agreement of the parties, or upon a showing of a significant change in circumstances warranting revision of the Agreement in a way suitably tailored to the change of circumstances, but in either event, only after approval by the Court." *Id.* at 14. Paragraph 30 does not provide for the award of fees in modification proceedings.

## II

In October of 2000, the parties filed a joint motion to modify the settlement agreement. *See* D.E. 458. The agreement had established a "Start Off Fund" in order to compensate qualified class members. *See* D.E. 464-1 at 8. The payments were to be made within two years, *see id.* at 13, but they started later than expected, and the parties asked the district court to modify the agreement to allow

5

payments to continue until the fund was exhausted. *See* D.E. 458 at 2. The district court did as the parties requested. *See* D.E. 459. No one sought attorneys' fees for the work performed during the 2000 modification process.

## A

Over a decade later, in September of 2013, the City invoked paragraph 30 of the settlement agreement and filed a "Motion for Limited Modification." *See* D.E. 464. According to the City, there had been "vast improvements in programs and services for the homeless," but those improvements did not ameliorate problems among two subgroups of the homeless population—"the chronically homeless and sexual predators." *Id.* at 4. From the City's perspective, modifications to the agreement were necessary "so [the] needs of these [sub]groups and the public at large [could] be met." *Id.* The City stated that it was "not seeking an Order to have the entire Agreement set aside." *Id.*

The City grouped its proposed modifications into three major categories: the chronically homeless; the law enforcement protocol as it pertained to shelters; and sexual predators. *See* D.E. 464 at 18. First, arguing that they were "treatment resistant," the City proposed exempting the chronically homeless (defined by the City as those "who refuse[ ] services on three separate occasions within a 189-day period," with "multiple refusals in a 24-hour period" counting only as a single refusal) from the definition of homeless persons. Second, the City wanted to

6

change the definition of an "available shelter" to a facility which could accommodate the homeless for a minimum of 24 hours (as opposed to the 48 hours set forth in the agreement) and which had mats (instead of beds) for the homeless to sleep on. The City also wished to expand the territorial boundaries of available shelters and to count facilities as shelters even if they imposed involuntary substance abuse or mental health treatment. Third, the City sought to exclude sexual predators from the class of homeless persons under the agreement. Fourth, the City requested that police officers be allowed to arrest homeless persons for "life-sustaining conduct" misdemeanors that endangered the health, safety, and welfare of such persons or the public, regardless of shelter availability. Fifth, the City recommended reducing the number of activities constituting "life-sustaining conduct" for which an arrest was prohibited unless a shelter was available, offered, and refused.

Mr. Peery, representing the class of plaintiffs, filed a response opposing the motion, arguing that, in effect, the City was attempting to terminate the settlement agreement as to the "chronically homeless" and registered sex offenders. *See* D.E. 477 at 2. Mr. Peery also maintained that the City failed to make out a *prima facie* case for the requested modifications. *See, e.g., id.* at 3, 33.

7

**B**

In October of 2013, the district court held a hearing on the City's motion for modification and suggested that the parties mediate their dispute. *See* D.E. 508 at 45–51. The district court appointed a mediator, and two months later the parties filed a joint motion to approve the so-called 2014 addendum to the original settlement agreement. The district court granted the parties' motion. *See* D.E. 525 (joint motion); D.E. 544 (order).

In the 2014 addendum approved by the district court, the parties agreed to some of the modifications proposed by the City. The major changes were that persons who were registered sex offenders or sexual predators under certain Florida statutes were no longer afforded some of the protections provided by the original settlement agreement; a facility was now considered a shelter if it could accommodate the homeless for a minimum of 24 hours and had mats at least three inches thick for the homeless to sleep on; starting a fire in a park no longer constituted "life-sustaining conduct;" and arrests could be now be made for "life-sustaining conduct" misdemeanors after a warning even if a shelter was available, but only if the conduct involved "imminent threat of physical injury." *See* D.E. 525-1 at 2-5. Some of the City's requested modifications, such as those relating to the chronically homeless, were not agreed to by the parties and did not become part of the 2014 addendum. *See id.* at 1-2.

8

Significantly, the 2014 addendum did not change the attorneys' fees language in paragraph 25 of the original settlement agreement. Nor did it alter paragraphs 25a ("Enforcement/Mediation") or 30 ("Modification") of that agreement. The 2014 addendum did, however, include a new paragraph 25b, which recognizes the fluidity of the homeless situation in Miami, and allows the parties to "mediate further modifications" to the settlement agreement and the 2014 addendum. *See* D.E. 525-1 at 8. Paragraph 25b provides that if future issues "are not resolved in mediation, either party may invoke the court's jurisdiction . . . to seek further modifications" of the settlement agreement. *Id.*

## C

Following the district court's approval of the 2014 addendum, Mr. Peery, as the class representative, moved for $476,094.55 in attorneys' fees for the work performed by counsel during the modification process. *See* D.E. 553 at 2. The district court denied Mr. Peery's motion, ruling that paragraph 25 of the settlement agreement permits attorneys' fees for enforcing the agreement, but not for opposing modifications to the agreement. *See* D.E. 557 at 2–3. The district court also found that Mr. Peery was not the prevailing party as to the City's motion for modification because paragraph 25 precluded such a finding and because Mr. Peery "settled short of a [c]ourt ruling on the [City's] motion." *Id.* at 3. Mr. Peery now appeals the denial of fees.

9

## III

We exercise plenary review in interpreting a settlement agreement which has become the functional equivalent of a consent decree through judicial approval. *See Waters*, 237 F.3d at 1277; *Turner v. Orr*, 759 F.2d 817, 821 (11th Cir. 1985). In cases governed by federal law, settlement agreements and consent decrees are interpreted according to "principles of contract law." *Waters*, 237 F.3d at 1277 (settlement agreements); *Jacksonville Branch, NAACP v. Duval Cty. Sch. Bd.*, 978 F.2d 1574, 1578 (11th Cir. 1992) (consent decrees). Agreements are construed to effectuate the intent of the parties, and such intent "is derived from the objective meaning of the words used." *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) (applying federal law to HUD standard-form covenant). *Cf. Kimbell Foods, Inc. v. Republic Nat'l Bank of Dallas*, 557 F.2d 491, 496 (5th Cir. 1977) (applying Texas law: "The language of the contract, unless ambiguous, represents the intention of the parties."), *aff'd sub nom., United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979).

## A

In civil rights cases brought pursuant to 42 U.S.C. § 1983, the award of attorneys' fees is governed by 42 U.S.C. § 1988. Generally, a plaintiff who prevails is entitled to an award of reasonable attorneys' fees "'unless special circumstances would render such an award unjust.'" *Crowder v. Hous. Auth. of*

*City of Atlanta*, 908 F.2d 843, 848 (11th Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

A consent decree constitutes a "material alteration of the legal relationship of the parties necessary to permit an award of attorneys' fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (internal quotation marks and citation omitted). So does a settlement agreement which the district court retains jurisdiction to enforce. *See Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002). Other circuits have therefore held that under § 1988 attorneys' fees can be awarded for defending, enforcing, opposing the modification of, or monitoring compliance with an existing consent decree. *See, e.g., Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 625-27 (6th Cir. 2013); *Balla v. Idaho*, 677 F.3d 910, 918 (9th Cir. 2012); *Johnson v. City of Tulsa*, 489 F.3d 1089, 1109 (10th Cir. 2007).

There is, however, an important caveat to these general principles. The Supreme Court held in *Evans v. Jeff D.*, 475 U.S. 717, 736 (1986), that § 1988 permits settlement agreements conditioned on the waiver of attorneys' fees, and we have since explained that one of the situations which might constitute a special circumstance justifying the denial of fees is "where the plaintiff through a settlement or consent order agreed to compromise his right to pursue subsequent fees." *Maloney v. City of Marietta*, 822 F.2d 1023, 1027 (11th Cir. 1987).

11

**B**

A settlement agreement which is the functional equivalent of a consent decree should be "interpreted as written." *Sierra Club v. Meiburg*, 296 F.3d 1021, 1032 (11th Cir. 2002). *See also United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) (explaining that "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it"). As explained below, paragraph 25 of the settlement agreement is unambiguous, and allows attorneys' fees only in enforcement proceedings.

Paragraph 25 provides (emphasis ours) that the City would pay the plaintiffs' counsel the sum of $900,000 in attorneys' fees, and that this payment would "conclude all claims for attorneys['] fees in the underlying litigation, including pending appeals, and in regard to all other matters connected with this Settlement Agreement, *except enforcement proceedings, should such become necessary after non-binding mediation as provided below*." The plaintiffs and the City, in other words, chose to limit future attorneys' fees to enforcement proceedings.

Here there were no enforcement proceedings. The plaintiffs never claimed that the City breached the settlement agreement/consent decree, and never sought enforcement through civil contempt after non-binding mediation. *See Reynolds v. McIness*, 338 F.3d 1201, 1208 (11th Cir. 2003) ("[C]onsent decrees, like all

12

injunctions, are to be enforced through the trial court's civil contempt power."); *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000) (explaining the process by which a plaintiff seeks enforcement of a consent decree). Instead, they opposed the City's motion for modification, and following mediation came to an agreement with the City on some changes. Because there were no enforcement proceedings, the plaintiffs' counsel are not entitled to an award of attorneys' fees under paragraph 25.

Our conclusion is reinforced by paragraph 30 of the agreement, which deals with modification, the type of proceeding at issue here. Notably, paragraph 30 does not provide for the award of attorneys' fees in proceedings to modify the terms of the settlement agreement/consent decree. Simply put, enforcement and modification are separate concepts (and constitute different proceedings) under the terms of the parties' agreement, and attorneys' fees are available only in enforcement proceedings. If we construed the agreement to allow for fees in modification proceedings, we would, improperly, be adding language to paragraph 30 and nullifying the limitation in paragraph 25. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (counseling that an agreement should be interpreted to "give effect to all its provisions and to render them consistent with each other").

Mr. Peery's reliance on cases like *Binta B.*, 710 F.3d at 625-27, is misplaced. The Sixth Circuit held in *Binta B.* that plaintiffs who achieve some success in opposing modifications to a consent decree are considered prevailing parties under § 1988, but that case did not involve a settlement agreement/consent decree which limited the availability of future attorneys' fees. Here we have just that sort of limitation, and it is the "agreement of the parties, rather than the force of the law . . . that creates the obligations embodied in a consent decree." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522–23 (1986). Again, we cannot rewrite paragraphs 25 and 30 to allow for attorneys' fees in modification proceedings.

The district court's approval of the 2014 addendum after the parties' successful mediation does not help Mr. Peery. It is true that, in the abstract, the court's approval of the 2014 addendum constituted the sort of judicial alteration in the parties' relationship that could make the plaintiffs prevailing parties under § 1988. *See Chmielarz*, 289 F.3d at 1320. But that is almost beside the point, for— as we have said before—this is not the typical § 1988 case. The parties struck a compromise about attorneys' fees (past, present, and future) and deviated from § 1988 when they executed the original settlement agreement many years ago. Because the 2014 addendum did not change paragraphs 25 and 30 of the settlement agreement/consent decree, those bargained-for paragraphs continue to control the

14

issue of attorneys' fees.  *See Evans*, 475 U.S.  at 736; *Maloney*, 822 F.2d at 1027.  And under paragraph 25, attorneys' fees are only available when there are enforcement proceedings.

We recognize that, at some level, this result may not "feel" right.  After all, in the 2014 addendum the plaintiffs preserved much of the success they had originally obtained.  But when parties enter into a settlement agreement that turns into the equivalent of a consent decree, they generally do so "after careful negotiation," the aim of which is to "produce[ ] [an] agreement on their precise terms."  *Armour & Co.*, 402 U.S. at 681.   And we have explained that "[l]ong standing precedent evinces a strong public policy against judicial rewriting of consent decrees."  *Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000).  Although it is important to compensate attorneys who help their clients prevail (or, as is the case here, keep their hard-won gains) in civil rights cases, it is just as important to hold parties to the terms of the bargains they strike to resolve contentious and difficult § 1983 actions.

## IV

The district court's denial of Mr. Peery's motion for attorneys' fees is affirmed.[2]

---

[2] Given our interpretation of the settlement agreement/consent decree, we need not and do not address the district court's ruling that the plaintiffs were not prevailing parties in the modification proceedings.

15

**AFFIRMED.**