**In re William W. SPRUILL, Ellen T. Spruill, Debtors.**

**William W. SPRUILL Ellen T. Spruill, Plaintiffs,**

**v.**

**SOUTH ATLANTIC PRODUCTION CREDIT ASSOCIATION, Defendant.**

Bankruptcy No. 85–01926–SO5.
Adv. No. S–87–0257–AP.

United States Bankruptcy Court, E.D. North Carolina.

March 10, 1988.

Mark C. Kirby, Faison, Brown, Fletcher & Brough, Raleigh, N.C., for defendant.

Rebecca H. Glass, Smith, Debnam, Hibbert & Pahl, Raleigh, N.C., for plaintiffs.

MEMORANDUM OPINION
AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matters before the court are cross-motions for summary judgment in this adversary proceeding filed by the chapter 11 debtors, William W. Spruill and Ellen T. Spruill, against South Atlantic Production Credit Association ("PCA") on November 4, 1987. A hearing on the summary judgment motions was held in Raleigh, North Carolina, on February 29, 1988.

The relevant facts are undisputed and are set forth in greater detail in a prior memorandum opinion entered by the court in this case on October 9, 1987. *In re Spruill,* 78 B.R. 766 (Bankr.E.D.N.C.1987). The debtors, who filed their petition for relief under chapter 11 of the Bankruptcy Code on October 31, 1985, are farmers who owned farm land in Franklin County, North Carolina, which was subject to a security interest held by PCA. In June of 1986, the property was sold at foreclosure sales in accordance with the terms of a consent order signed by the debtors and PCA which provided for the lifting of the automatic stay without further order of the court if

the debtors were unable to sell the property within a specified period of time. PCA purchased the property which was sold at foreclosure subject to property taxes owing to Franklin County. In October of 1986, PCA made payments to Franklin County for the property taxes which had accrued, both prepetition and postpetition, on the property which was the subject of the foreclosure. PCA then filed a claim against the debtors' estate for the amount of the taxes it paid to Franklin County.

PCA took the position that, with respect to the taxes which had accrued on the debtors' property prepetition, Franklin County was entitled to a priority claim pursuant to 11 U.S.C. § 507(a)(7)(B) which reads as follows:

> The following expenses and claims have priority in the following order:
>
> . . . .
>
> (7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—
>
> . . . .
>
> (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

While PCA conceded that it was precluded by 11 U.S.C. § 507(d)[1] from being subrogated to Franklin County's § 507(a)(7)(B) priority rights, it maintained that it was subrogated to the taxing authority's rights as an unsecured creditor.

In its memorandum opinion dated October 9, 1987, the court agreed with PCA that § 507(d) did not prohibit a subrogee of a taxing authority from receiving a distribution as an unsecured creditor. The court

nevertheless held that 11 U.S.C. § 502(b)(3)[2] mandated the disallowance of PCA's subrogated claim for the prepetition taxes it paid as either a priority or an unsecured claim. Section 502(b)(3) was held to require the complete disallowance of a property tax claim to the extent that that claim exceeded the value of the estate's interest in the property subject to the tax. The court had previously found that the value of the debtors' estate's interest in the property in question was zero.

After the entry of the order denying PCA's prepetition tax claim, PCA made demand on the debtors (whose chapter 11 plan had already been confirmed) for reimbursement of those taxes in the amount of $4,515.50, alleging that the taxes were nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A). On November 4, 1987, the debtors filed a "Complaint for Declaratory Relief" which asked this court to determine that any obligation created by PCA's payment of the prepetition taxes was dischargeable.

Section 523(a)(1)(A) of the Bankruptcy Code provides an exception for discharge for any debt for a tax or a customs duty "of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed." A subrogee's rights against a debtor pursuant to § 523(a)(1) can be no greater than those of the taxing authority whose rights are subrogated. *Matter of Waite*, 698 F.2d 1177 (11th Cir. 1983). It is therefore necessary to determine whether the Franklin County tax authority could have prevented a discharge of the prepetition tax obligation under § 523(a)(1). That exception should be narrowly construed against the creditor and in

---

1. 11 U.S.C. § 507(d) states:

   An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

   The reference to subsection "(a)(6)" should be read as a reference to subsection "(a)(7)". The 1984 amendments to the Bankruptcy Code renumbered the tax priority of section 507 from "(a)(6)" to "(a)(7)", but, due to a technical error, failed to revise the cross reference to

§ 507(a)(6) contained in § 507(d). "[I]t is obvious that Congress intends the section 507(a)(6) cross reference in section 507(d) to continue to refer to tax claims." *Matter of Barefoot Sports, Inc.,* 61 B.R. 546, 548 n. 2 (Bankr.W.D.Wis. 1986).

2. Under 11 U.S.C. § 502(b)(3), an objected to claim is to be disallowed to the extent that "if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property."

favor of the debtor in order to carry out the "fresh start" policy of the bankruptcy law. *In re Terrell*, 65 B.R. 365 (Bankr.N. D.Ala.1986).

The debtors argue that the prepetition tax claim cannot be excepted from discharge pursuant to § 523(a)(1)(A) because of the court's prior ruling disallowing that claim. They take the position that the tax does not satisfy the requirement of § 523(a)(1)(A) that it be "of the kind ... specified in section ... 507(a)(7)" because § 507(a)(7) refers to *"allowed* unsecured claims of governmental units" (emphasis added). PCA argues that the fact that the tax claim was disallowed is irrelevant for purposes of determining its nondischarge-ability under § 523(a)(1)(A) since that section excepts from discharge taxes of the kind specified in § 507(a)(7) "whether or not a claim for such tax was filed or allowed."

The legislative history to § 523(a)(1)(A) favors the debtors' interpretation. The version of § 523(a)(1) contained in the bill which was considered by the Senate on September 7, 1978, stated that a tax which would be entitled to specified priorities would be excepted from discharge whether or not a claim for such tax had been filed; there was no language in the Senate bill stating that the tax would be excepted from discharge whether or not a claim for such tax had been allowed. S. 2266, 95th Cong., 2d Sess. § 523(a)(1) (1978). The Report of the Senate Judiciary Committee on S. 2266 stated the following with respect to the Senate version of § 523(a)(1):

> Subsection (a) lists nine kinds of debts excepted from discharge. Taxes that are excepted from discharge are set forth in paragraph (1).... These categories include taxes for which the tax authority failed to file a claim against the estate or filed its claim late.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 77–78 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5863.

The version of § 523(a)(1) contained in the House bill excepted from discharge any debt for a tax "of the kind and for the periods specified in 507(6) [the relevant por-

tions of which are currently contained in § 507(a)(7) ] of this title, whether or not a claim for such tax was allowed." H.R. 8200, 95th Cong., 1st Sess. § 523(a)(1) (1977). The House Judiciary Committee Report on the House bill elaborated on the significance of this language which essentially was retained in the enacted version of § 523(a)(1):

> Subsection (a) lists eight kinds of debts excepted from discharge. Taxes that are entitled to priority are excepted from discharge under paragraph (1).... If the taxing authority's claim has been disallowed, then it would be barred by the more modern rules of collateral estoppel from reasserting that claim against the debtor after the case was closed.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363–64 (1977), U.S.Code Cong. & Admin. News 1978, p. 6319.

This legislative history suggests that the language of the final version of § 523(a)(1)(A) relied on by PCA was intended to prevent the discharge of tax claims which were never filed or filed late but which would otherwise have been allowable, not tax claims which would have been disallowed even if they had been timely filed. A leading treatise on bankruptcy supports this conclusion:

> Although a tax claim need not be filed or its allowance passed upon in order to determine dischargeability, if a claim is denied priority status on the merits, the tax authority is most likely precluded, by principles of collateral estoppel, from asserting the tax debt's nondischargeability on that ground in subsequent litigation.

1 *Norton Bankruptcy Law & Practice* § 27.29 (1981).

PCA has not cited any case (and this court has found none) in which a tax claim made under § 507(a)(7) had been disallowed on its merits and then determined to be "of the kind" specified in that section so as to be excepted from discharge under § 523(a)(1)(A). The only cases this court has found which have applied the "whether or not a claim for such tax was filed or allowed" language of § 523(a)(1)(A) have

done so when no proof of claim for the taxes in question had been filed in a timely fashion. *In re Gurwitch,* 794 F.2d 584 (11th Cir.1986); *In re Massoni,* 20 B.R. 416 (Bankr.D.Kan.1982).

Although the language of § 523(a)(1)(A) is not a model of clarity, this court believes that, had that section been intended to except from discharge § 507(a)(7) tax claims which were disallowed on their merits or which would have been disallowed had they been timely filed, the statutory language would have stated that taxes of the kind specified in § 507(a)(7) are excepted from discharge whether or not a claim for such tax was filed or *disallowed.* In the absence of any case authority to support PCA's interpretation of § 523(a)(1)(A), this court will adopt the interpretation suggested by the legislative history to that section and hold that PCA's subrogated tax claim was discharged by the debtors' bankruptcy.

PCA's motion for summary judgment will be denied, the debtors' motion for summary judgment will be granted, and a separate judgment shall be entered holding that PCA's claim in the amount of $4,515.50, based upon its payment of property taxes which had accrued on property of the debtors prior to the filing of their bankruptcy petition, is a dischargeable debt. Accordingly,

IT IS HEREBY ORDERED that South Atlantic Production Credit Association's motion for summary judgment is DENIED; and

IT IS FURTHER ORDERED that the debtors' motion for summary judgment is GRANTED.