**In re Thomas and Judith
MATUNAS, Debtors.**

**No. 96–36436 (RTL).**

United States Bankruptcy Court,
D. New Jersey.

April 16, 2001.

---

**5.** Section 38 could not be cross-referenced or found by either the court or the State.

Robert J. Cleary, United States Attorney, District of New Jersey, Robert Saal, Special Assistant, United States Attorney, Newark, NJ, for the United States of America.

W. Peter Ragan, Jr., Ragan & Ragan, PC, Wall, NJ, for the Debtors.

## *OPINION*

RAYMOND T. LYONS, Bankruptcy Judge.

This matter arises out of a stipulation agreement entered into by the debtors and the United States of America, Department of Treasury ("IRS"), determining the amount of secured, priority and unsecured tax claims owed by the debtors to the IRS. The issue is whether the IRS is prevented by the doctrine of claim preclusion from seeking to collect taxes in addition to those set forth in the stipulation agreement. In other words, is the stipulation agreement binding on the parties to permanently fix the pre-confirmation tax liability owed to the IRS so that the IRS is precluded from relitigating the claims on the grounds of res judicata?

This court has jurisdiction under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and (b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 referring all cases under Title 11 of the United States Code to the bankruptcy court. Additionally, this is a core proceeding that can be heard and determined by a bankruptcy judge under 28 U.S.C. § 157(b)(2)(B).

For the reasons set forth below, this court concludes that the IRS is barred from relitigating claims resolved in the stipulation agreement entered into with the debtor because: 1) the stipulation agreement had the effect of a valid final judgment on the merits pursuant to 11 U.S.C. § 505(a)(1); 2) the debtor and the IRS are the identical parties that entered into the stipulation agreement; and 3) the IRS' claim grows out of the same transaction and occurrence that was the subject of

the stipulation agreement. (i.e., for the same taxable years.)

## FACTS

The debtors, Thomas and Judith Matunas, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 9, 1996. The purpose of the debtors' filing was to resolve outstanding issues with the IRS regarding the amount of secured and unsecured tax claims. The debtors' first amended plan was confirmed on July 13, 1999. This plan provided that the IRS' priority and secured claims would be paid in full while its general unsecured claim would not be paid.

After the plan was confirmed, the debtors entered into negotiations with the IRS to agree upon the amount of prepetition taxes and a payment schedule. The result of these negotiations was a stipulation agreement supplementing the debtors' plan of reorganization. Specifically, the stipulation agreement addressed outstanding tax liabilities for the years 1993–1995 and determined that the IRS had a secured claim against the debtors in the amount of $188,577.99 which would be paid in full, with statutory interest, within ten years of confirmation of the debtors' plan of reorganization, in equal quarterly installments. The stipulation also provided that the IRS had an unsecured priority tax claim against the debtors in the amount of $41,434.46, which would be paid in full with statutory interest computed from the date of confirmation of the plan of reorganization, within six years of the dates of assessment. Thus, the total amount of the IRS' secured and unsecured priority claims was $230,012.45. These figures were taken from an IRS proof of claim dated April 9, 1999. The stipulation acknowledged that the debtors' plan made no provision for the payment of the IRS'

unsecured general claims. The stipulation agreement was filed on October 12, 1999.

On October 21, 1999 the IRS retained the debtors' tax refund in the amount of $63,936.00. On October 30, 1999 the debtors forwarded to the IRS their state tax refund in the amount of $14,717.00. On June 19, 2000 the debtors sold their house and the IRS received the sale proceeds in the amount of $185,927.83. Thus, the debtors paid the IRS $264,580.83 within one year of the confirmation date, an amount that exceeded the agreed upon stipulation figure by $34,568.38.

On September 28, 2000, debtors' counsel filed a motion to re-open the case to enforce the chapter 11 plan upon the IRS. The IRS responded and acknowledged that the debtors were due a refund for $20,348.67. The debtor and the IRS later agreed that the IRS would provide a refund to the debtors in the amount of $20,348.17 and that the IRS would release all of the liens upon the debtors' property. On October 20, 2000 the debtors notified the court that the motion was resolved and that a consent order would be submitted. The debtors' attorney drafted a proposed consent order and sent it to the IRS's attorney; however, the consent order was not signed. Instead, on November 3, 2000, the IRS advised the debtors' counsel that a new issue had arisen with respect to the credit balance—namely, the IRS had failed to include the tax liability for the year 1993 in its proof of claim, which formed the basis for the stipulation agreement.

## DISCUSSION

 Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

The United States Supreme Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). The Court has also stated that "res judicata is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917) (cited in *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).[1] Res judicata encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes. *See Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

■■ The normal rules of res judicata apply to the decisions of bankruptcy courts. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (internal citations omitted). Both federal law and New Jersey law apply res judicata

or claim preclusion[2] when three circumstances are present: 1) a final judgment on the merits in a prior suit involving; 2) the same parties or their privities; and 3) a subsequent suit based on the same cause of action. *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (citing *Board of Trs. of Trucking Employees Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir.1992)) *noted in In re Giberson*, 260 B.R. 78, 82 (Bankr. D.N.J.2001); *see also Hulmes v. Honda Motor Co.*, 924 F.Supp. 673, 682 n. 12 (D.N.J.1996) *noted in In re Hawkins*, 231 B.R. 222, 229 (D.N.J.1999). If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded. *CoreStates*, 176 F.3d 187, at 194.

■ The facts in this case satisfy the three elements of the claim preclusion doctrine. Of all three, it is the first element of the *CoreStates* test that warrants the most analysis. Regarding the first element, the judgment in the prior action-in this case, the stipulation agreement-is valid, final, and on the merits. First, 11 U.S.C. § 505 entitled, "Determination of Tax Liability"[3] gives the bankruptcy court

---

1. The difference between res judicata and collateral estoppel is that res judicata forecloses all issues that could have been litigated previously, while collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. *In re Lucas*, 186 B.R. 67, 69 (Bankr.E.D.Va.1995) (quoting *Brown v. Felsen*, 442 U.S. 127, 139, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). Although distinct in operation, both doctrines of res judicata and collateral estoppel have a common objective—judicial finality. *See Arizona v. California*, 460 U.S. 605, 619, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983).

2. The United States Court of Appeals for the Third Circuit has adopted the Second Restatement of Judgments' use of the terms "claim preclusion" and "issue preclusion" in order to simplify and clarify the often confusing

terms "res judicata" and "collateral estoppel." *See Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988).

3. 11 U.S.C. § 505 states, in part:

(a) (1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribu-

the power to determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax. 11 U.S.C. § 505(a)(1). The United States Supreme Court has stated that pursuant to § 505 "the court may determine the amount or legality of any tax, a determination of an issue that obviously should bind the governmental unit ..." *Hoffman v. Connecticut Dep't of Income Maint.,* 492 U.S. 96, 102, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); *see also Quattrone Accountants Inc. v. Commissioner,* 895 F.2d 921, 923 (3d Cir.1990) (bankruptcy court correctly examined 11 U.S.C. § 505(a)(1) concluding that § 505 permitted it to determine only the tax liabilities of a debtor or the estate, not of non-debtor third parties.)

■ Second, a judgment on the merits for purposes of res judicata does not necessarily require a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or a summary judgment. *See In re West Tex. Mktg. Corp.,* 12 F.3d 497, 501 (5th Cir.1994) ("The settlement clearly provided the means by which the final amount owed by the parties could be calculated. Therefore, the bankruptcy court settlement agreement was effectively a final judgment.") (internal citations omitted); *see also* 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 131.30, at 131–87 to 88 (3d ed.1998).

The facts of *United States v. International Bldg. Co.,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953) are most analogous to the case at bar. The IRS had assessed deficiencies against the taxpayers for the taxable years 1933, 1938, and 1939. The taxpayers filed a petition for reorganiza-

tion in bankruptcy. Thereafter, the parties filed stipulations in the Tax Court stating that there were no deficiencies for the taxable years in question. *Id.* at 505, 73 S.Ct. 807. Some time later, the IRS assessed a deficiency for later years on the same issue in question in the earlier years. The Court agreed that the stipulation for years 1933, 1938, and 1939 were res judicata as to the tax claims for the same years. *See id.* at 505–06, 73 S.Ct. 807. However, that did not bar the IRS from asserting deficiencies for later years on the same issue. *Id.*

Similarly in the Matunas' case, the IRS omitted from the unsecured priority portion of the claim their liability for the 1993 Form 1040. Now, over a year after the stipulation was filed, the IRS seeks to increase its assessment for 1993. However, the stipulation agreement addressed outstanding tax liabilities for 1993–1995. Therefore, based on the Court's decision in *International Bldg.,* the IRS would be precluded from relitigating a claim which was already the subject of a previously entered stipulation agreement for the same year in question.

The facts in this case are also like those in *In re Allvend Indus. Snacks by Toms, Inc.,* 29 B.R. 900 (Bankr.S.D.N.Y.1983). In *Allvend,* Judge Galgay held that where a party seeks to relitigate an issue concerning an earlier entered stipulation of settlement knowingly entered into by the parties, res judicata applies. *Id.* at 903. The court stated, "A key purpose of res judicata is to impart finality. This court believes that the interests of justice are best served by applying res judicata to the [s]tipulation and bar relitigation of the ad-

nal of competent jurisdiction before the commencement of the case under this title, or
 (B) any right of the estate to a tax refund, before the earlier of—

 (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
 (ii) a determination by such governmental unit of such request.

ministration claim determined by that stipulation." *Id.*

Furthermore, at least four United States Courts of Appeal have held that when the factual findings necessary to a judgment are incorporated into a consent decree, they satisfy the actually litigated element of issue preclusion and are given preclusive effect. *See Graham v. Commissioner,* 973 F.2d 1089, 1097 (3d Cir. 1992) (citing *Klingman v. Levinson,* 831 F.2d 1292, 1296 (7th Cir.1987); *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987); *In re Allman,* 735 F.2d 863, 864–65 (5th Cir.1984)). The United States Court of Appeals for the Third Circuit has taken this proposition relating to consent decrees and applied it with equal force to stipulation agreements. *See Graham,* 973 F.2d 1089, at 1097–98. However, the holding in *Graham* is distinguishable because the facts in *Graham* are markedly different than the facts in the instant case. In *Graham,* the chapter 11 debtors filed an adversary proceeding against the IRS seeking a determination that their liability for unpaid income taxes and fraud penalties were dischargeable. *See id.* at 1092. The IRS moved for partial summary judgment, asserting that the debtors' discharge request was barred under the principles of claim and issue preclusion because of a prior Tax Court judgment in favor of the IRS, which was based largely upon a stipulation agreement entered into by the parties. *See id.* Although the court found that the Tax Court judgment holding the debtors liable for income tax deficiencies resulting from fraudulent tax returns did not have claim preclusion or issue preclusion effect in determining whether the

debtors' liability was nondischargeable, the court stated, "[T]he Tax Court's opinion does not set forth any facts concerning the alleged fraud. The sole issue before the Tax Court was the propriety of using the seized documents, and not the issue of fraud." *Id.* at 1098. Although claim preclusion did not apply in *Graham,* it still applies in this case because the issues presently before this court deal with the amount of secured and unsecured tax claims owed to the IRS, the same issues litigate earlier in the stipulation agreement.

In opposition to the debtors' motion to reopen the case, the IRS first argues that under 11 U.S.C. § 1141(d)(2) the IRS' entire claim is preserved on any debt excepted from discharge under 11 U.S.C. § 523.[4] The IRS cites a line of cases interpreting § 1141(d)(2) for the proposition that despite the confirmation of a chapter 11 plan, an individual debtor is not discharged from any debt excepted under 11 U.S.C. § 523. *See e.g., In re Grynberg,* 986 F.2d 367 (10th Cir.1993), *cert. denied,* 510 U.S. 812, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993); *In re Spruill,* 83 B.R. 359 (Bankr.E.D.N.C.1988). However, the IRS' argument does not address the issue at hand, which centers around the fact that both parties voluntarily entered into a stipulation agreement determining the amounts owed to the IRS. Likewise, it does not answer the question of whether the stipulation agreement remains binding on the parties, whether it permanently fixed the pre-confirmation tax liability owed to the IRS, and whether this court is precluded from relitigating the agreement on the grounds of res judicata.

---

4. The former subsection makes clear what taxes remain nondischargeable in the case of a debtor emerging from a reorganization under chapter 11. In other words, nondischargeable taxes are considered priority taxes under 11 U.S.C. § 523(a)(1)(A) states that a discharge under § 1141 does not discharge an individual debtor from any debt for a tax or a customs duty of the kind and for the periods specified in section 507(a)(2) or 507(a)(8), whether or not a claim for such tax was filed or allowed. *See* 11 U.S.C. § 523.

In short, the effect of relying solely on §§ 507, 523, and 1141(d)(2) is that it essentially renders the stipulation agreement meaningless.

The IRS also argues that *In re Becker's Motor Transport., Inc.*, 632 F.2d 242 (3d Cir.1980) controls the outcome in this case. In *Becker's*, the issue was whether a bankruptcy court had jurisdiction to reopen a chapter 11 proceeding to adjudicate the personal liability of a rehabilitated debtor for pre-petition penalties and post-petition interest on a nondischargeable tax debt that had been satisfied pursuant to a plan. *Id.* The IRS filed proofs of claim against the debtors' estate for nondischargeable tax debts and pre-petition interest owed by the debtors. *Id.* at 244. After all claims had been filed, the debtors proposed a joint plan, which was confirmed by the bankruptcy court. *Id.* Pursuant to the plan, the tax indebtedness that had been claimed by the IRS was paid in full. Thereafter, however, the IRS sought to collect from the rehabilitated debtors monies for pre-petition penalties and post-petition interest on the satisfied tax debts, notice of which had not been provided earlier. *See id.* The court held that although claims for pre-petition penalties on a tax debt are not allowable against a bankruptcy estate, debtors may be held personally liable for such penalties following the confirmation of a chapter 11 plan. *Id.* at 248 (internal citations omitted). Furthermore, the court stated that inasmuch as claims for pre-petition penalties and post-petition interest are nondischargeable, ... a reasonable debtor should expect that the IRS will seek to enforce such claims. *Id.* at 249. Finally, the court stated that in submitting the proof of claim form, the IRS neither waived its right to assert claims for pre-petition penalties and post-petition interest nor induced the debtors' mistaken assumption that they would not be held liable for debts of this character. *Id.* at 249.

*Becker's* is distinguishable from the facts before this court because in *Becker's* there was no stipulation agreement entered into by the parties. Thus, the court did not address the doctrine of claim preclusion-the issue directly relevant in this case. Also, there was no dispute as to the amount of the IRS' claim. Instead, the IRS was seeking to collect penalties and interest-amounts which were omitted from the IRS' proof of claim. Because the holding of *Becker's* would therefore not apply to the facts presented here, this court finds that the first element of the *CoreStates* test is satisfied because the stipulation agreement signed by this court is valid, final, and on the merits. *CoreStates,* 176 F.3d 187, at 194.

With respect to the second element, the parties in the pending action—i.e., the debtors and the IRS—are identical to those in the prior action. Finally, the claim in the pending action grew out of the same transaction or occurrence as the claim(s) at issue in the stipulation agreement. Specifically, on the stipulation agreement the IRS omitted from the unsecured priority portion of the claim the debtors' liability for the 1993 Form 1040. The stipulation agreement addressed outstanding tax liabilities for 1993. Therefore, the IRS' claim derived directly out of the same transaction in the stipulation agreement.

### CONCLUSION

In light of the United States Supreme Court's jurisprudence on enforcing the doctrine of claim preclusion and as a means of achieving finality in the debtors' reorganization, this court concludes that the stipulation agreement: 1) remains binding on the parties despite the IRS' error; and 2) permanently fixed the pre-

confirmation tax liability owed to the IRS. This court also concludes that the IRS is barred from relitigating the stipulation agreement entered into with the debtor because: 1) the stipulation agreement has the effect of a valid final judgment on the merits pursuant to 11 U.S.C. § 505(a)(1); 2) the debtor and the IRS are the identical parties that entered into the stipulation agreement; and 3) the IRS' claim grows out of the same transaction and occurrence that was the subject of the stipulation agreement.