152 T.C. No. 9

UNITED STATES TAX COURT

CHARLES K. BRELAND, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21940-12.                    Filed March 28, 2019.

In P's chapter 11 bankruptcy proceeding, upon the agreement of P and the IRS, the bankruptcy court entered a consent order resolving the IRS' objection to the plan of reorganization that settled the amount of the IRS' priority claim and set out procedures for resolving the IRS' unsecured general claim (consent order). After the plan of reorganization was confirmed, the IRS moved for leave to amend its proof of claim because it determined that P might owe additional prepetition taxes. That motion was denied by the bankruptcy court. Later, but while the bankruptcy case was still pending, R issued a notice of deficiency for certain of the years covered by the consent order and the plan of reorganization, and P petitioned for redetermination. P has moved for summary judgment that the consent order bars R from pursuing any additional deficiency for the tax years covered in the consent order.

<u>Held</u>: A bankruptcy court order that does not determine a taxpayer's total Federal tax liability for a given tax year, but only

resolves the amount of the IRS' claim to be paid by the bankruptcy estate pursuant to the plan of reorganization, does not preclude a subsequent notice of deficiency (or resulting tax proceeding) for nondischargeable taxes from the same tax year.

Held, further, because the bankruptcy court did not determine P's total Federal tax liability for any of the subject tax years, res judicata and collateral estoppel do not bar R from pursuing additional deficiencies for the subject tax years.

John H. Adams, for petitioner.

Edwin B. Cleverdon, for respondent.

OPINION

PUGH, Judge: Respondent issued a notice of deficiency determining that petitioner and his wife[1] owed the following:

| Year | Deficiency | Penalty sec. 6662(a) | Addition to tax sec. 6651 |
|------|-----------|----------------------|---------------------------|
| 2004 | $9,579,083 | $1,915,817 | -0- |
| 2005 | 1,953,677 | 390,735 | $823,558 |
| 2008 | 1,205,136 | 241,027 | -0- |

_____

[1] Petitioner's wife, Yvonne S. Breland, filed a separate petition at docket No. 22319-12. Her case has been continued pending resolution of the summary judgment motion in petitioner's case.

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

Petitioner has filed a motion for summary judgment asking us to rule that respondent is precluded from pursuing the income tax deficiencies for tax years 2004, 2005, and 2008 because he and respondent already entered into a negotiated settlement agreement determining the amounts of tax and penalties he owed for those years as part of his bankruptcy proceeding. Respondent objects, arguing that there was no such settlement nor did the bankruptcy court determine petitioner's total Federal tax liability for any of the subject years. The facts are not disputed; rather we must decide the legal effect of a consent order entered by the bankruptcy court ratifying the parties' settlement in the bankruptcy case of the amount of the Internal Revenue Service's (IRS) priority claim allowed under the plan of reorganization (consent order).

## Background

We begin our analysis with a history of petitioner's bankruptcy proceedings. On March 11, 2009, petitioner commenced a chapter 11 bankruptcy case in the U.S. Bankruptcy Court for the Southern District of Alabama (2009 bankruptcy).

On or about April 15, 2009, the IRS filed a proof of claim for income tax and penalties from petitioner of $5,986,306. The claim was amended several times to seek different amounts from petitioner for tax years 2004 through 2008. Petitioner objected to the proof of claim because of the penalties asserted by the IRS, arguing that he had "reasonable cause for not paying the taxes on time." A plan of reorganization was proposed, and the IRS filed an objection to confirmation, asserting, among other things, that the plan should not be confirmed because the fund created by the plan to pay priority tax claims was insufficient to pay the priority tax claims asserted against the estate. Ultimately, the plan of reorganization was confirmed, and the parties settled the IRS' objection pursuant to a stipulated consent order entered by the bankruptcy court on December 17, 2010. As entered, it stated:

> Upon review of the record and agreement of the debtor, Charles K. Breland, Jr., and the claimant, United States of America, in settlement and compromise of the United States' Protective Objection to the Amended Plan of Reorganization of Ohana Cabo[2] (Doc. 449), it is hereby ORDERED, ADJUDGED and DECREED that:

> 1. The Internal Revenue Service ("IRS") shall withdraw its amended proof of claim (Claim No. 5-5) filed on December 6, 2010 and reinstate its amended proof of claim (Claim No. 5-4) filed on October 4, 2010 ("IRS claim").

---

2 Ohana Cabo LLC was a plan proponent who, under the terms of the plan of reorganization, acquired certain assets.

2. The IRS claim totals $2,020,697.01 and consists of unsecured priority tax claims totaling $671,318.55 ("IRS priority tax claims"), and unsecured general claims totaling $1,349,378.46 ("IRS unsecured general claims").

3. The IRS priority tax claims of $671,318.55 shall be allowed in full and paid in accordance with the terms of §§ 2.2 and 5.2 of the Confirmed Ohana Cabo LLC's Chapter 11 Plan of Reorganization As Amended ("Plan"). See Docs. 462 and 462-1.

4. The debtor shall preserve his existing objection to the IRS unsecured general claims pursuant to § 6.1 of the Plan, and said claims shall be deemed disputed within the meaning of § 3.2.2 of the Plan until resolution of such disputed claims through either settlement or adjudication to a Final Order (as defined in § 1.18 of the Plan). To the extent that such disputed claims become Allowed (as defined in § 1.4 of the Plan), payment of said Allowed claims shall be made in accordance with §§ 3.2.2 and 6.2 of the Plan.

5. Hearing on the debtor's objection to the IRS unsecured general claims shall be set for Tuesday, February 8, 2011 at 8:30 a.m.

6. The debtor, individually and in his capacity as Post-Confirmation Estate Representative (as defined in § 1.34 of the Plan), shall be obligated to comply with the necessary tax return reporting requirements for the debtor and the estate for the tax years 2004 through 2009 by no later than Wednesday, February 16, 2011.

7. The Plan shall be modified to read, as follows:

Plan Default Relating to Taxes. Upon any default under the Plan relating to the non-payment of any Administrative Expense, Priority Tax Claims or Unsecured Claim, the administrative collection powers and the rights of the United States shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of Notice of Federal Tax

Lien and the powers of levy, seizure, and sale under Title 26 of the United States Code.

See Plan, at § 11.9 (formerly, § 11.8 (prior to amendment)).

8. The United States' Protective Objection to the Amended Plan of Reorganization of Ohana Cabo (Doc. 449) shall be withdrawn with prejudice.

After confirmation, the IRS conducted discovery in connection with petitioner's objection to penalties. On October 31, 2011, the IRS filed a motion for leave to file an amended proof of claim to assert a claim for tax for 2004 through 2008 of approximately $45 million, alleging that it learned through discovery that petitioner substantially underreported his income in those years. The bankruptcy court denied this motion on December 20, 2011, holding that the IRS was bound by the consent order. The IRS appealed to the U.S. District Court for the Southern District of Alabama, which determined that the bankruptcy court did not abuse its discretion. The IRS then appealed to the U.S. Court of Appeals for the Eleventh Circuit; that appeal ultimately was dismissed by stipulation of the parties.

Later, petitioner filed a motion for attorney's fees under section 7430 for the litigation over the IRS' attempts to amend the proof of claim. In an order dated May 27, 2016, the bankruptcy court denied that motion, holding that the IRS was

"substantially justified" in pursuing amendment because of doubt at the time about whether it could pursue its claim for additional taxes in another proceeding.

While the 2009 bankruptcy was pending, respondent issued the notice of deficiency before us. The proceeding was stayed until the conclusion of the 2009 bankruptcy in 2016. Petitioner now has pending a second bankruptcy proceeding (2016 bankruptcy), which he commenced in 2016 before the conclusion of the 2009 bankruptcy. Respondent has filed a claim in that proceeding for tax and penalties for tax years including those before us. On February 7, 2017, the bankruptcy court entered an order in the 2016 bankruptcy lifting the automatic stay to allow this case and cases challenging a notice of deficiency for 2009, docket No. 21946-12 (for petitioner) and docket No. 22228-12 (for petitioner's wife), to go forward.

### Discussion

Rule 121(b) provides in part that after a motion for summary judgment and an opposing response are filed, "[a] decision shall * * * be rendered if the pleadings * * * and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla.

Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The question of whether res judicata or collateral estoppel applies in this case raises no factual disputes; therefore summary adjudication is appropriate.

Petitioner argues that the consent order and the principle of res judicata preclude respondent from collecting any additional tax for 2004 through 2008. Petitioner argues that United States v. Int'l Bldg. Co., 345 U.S. 502, 506 (1953), controls the outcome of this case. In that case the Supreme Court held that a Tax Court decision determining the taxpayer's liability on the basis of a joint stipulation by the parties was res judicata as to the years that had been at issue in the Tax Court case but did not collaterally estop the Government in litigation relating to other tax years. Respondent counters that 11 U.S.C. secs. 1141 and 523 (2018) forbid application of res judicata here by making certain tax claims nondischargeable in bankruptcy.

Res judicata prevents repetitious suits involving the same cause of action and is rooted in "considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." Commissioner v. Sunnen, 333 U.S. 591, 597 (1948). Traditionally stated, "when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to

every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" Id. (quoting Cromwell v. Cty. of Sac, 94 U.S. 351, 352 (1876)). The elements of res judicata are: (1) identity of parties, (2) prior judgment by a court of competent jurisdiction, (3) final judgment on the merits, and (4) the same cause of action. Hambrick v. Commissioner, 118 T.C. 348, 351 (2002) (citing Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694 (4th Cir. 1989), and Republic Supply Co. v. Shoaf, 815 F.2d 1046 (5th Cir. 1987)).

However, where the subsequent cause of action or demand is different, the principle of res judicata may be applied "much more narrowly", as collateral estoppel. Commissioner v. Sunnen, 333 U.S. at 597-598. Collateral estoppel precludes litigation of issues in a second cause of action if those issues were actually litigated and necessary to the outcome of the first action. Hambrick v. Commissioner, 118 T.C. at 353 (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979)). Thus, a prior judgment may bind parties, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." Commissioner v. Sunnen, 333 U.S. at 598 (quoting Cromwell, 94 U.S. at 353). And parties are free to litigate points which

were not at issue in the prior action, even if they theoretically could have been raised and decided in the prior action. Id.

For collateral estoppel to bind a party as to an issue, five conditions must be established: (1) the issue in the second suit must be identical in all respects with the one decided in the first suit, (2) there must be a final judgment rendered by a court of competent jurisdiction, (3) the party against whom collateral estoppel is invoked must have been a party (or privy to a party) to the prior judgment, (4) the relevant issue must have been actually litigated and the resolution of the issue must have been essential to the prior decision, and (5) controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990).

Res judicata and collateral estoppel may apply to proceedings involving Federal taxes. Commissioner v. Sunnen, 333 U.S. at 598-599. Here, the causes of action are not the same; therefore, res judicata does not apply. Specifically, before us is a petition for redetermination of petitioner's total tax liability for the years covered by the notice of deficiency, whereas the consent order was entered to resolve the IRS' objection in the plan confirmation proceeding during the 2009 bankruptcy. The facts necessary to the deficiency case before us--petitioner's

income, deductions, and credits--were not necessarily considered during the plan

confirmation proceeding, which primarily addressed viability of the proposed plan

of reorganization and disposition of the debtor's assets pursuant to 11 U.S.C.

1129(a) (2018).  See Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In

re Piper Aircraft Corp.), 244 F.3d 1289, 1297, 1299 (11th Cir. 2001) (explaining

that causes of action are the same, for res judicata purposes, only if they arise out

of the same nucleus of operative fact); Hambrick v. Commissioner, 118 T.C. at

353 (finding that res judicata did not bar deficiency proceeding because

bankruptcy court did not inquire into merits of debtor's tax liability in process of

confirming plan of reorganization or otherwise consider tax liability in bankruptcy

case).[3]

---

[3] In Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1297-1299 (11th Cir. 2001), the Court of Appeals observed that the facts giving rise to a bankruptcy proceeding involve the financial collapse of the debtor and that the chapter 11 confirmation process is primarily an inquiry into the viability of the proposed plan of reorganization and the disposition of the assets of the bankruptcy estate.  Here, the facts underlying the deficiency proceeding--petitioner's tax items for each year--were not raised or litigated in the confirmation process.  The consent order expressly left petitioner's objection to the IRS' claim pending and set forth a process for dispute resolution.  And as we will explain, because the IRS held nondischargeable debts and the bankruptcy court never examined or decided petitioner's tax liability for any of the subject years, the bankruptcy proceeding, more broadly, was limited to resolving the amount of tax that would be paid by the bankruptcy estate under the plan of reorganization.  And as we explain below, we also hold that, as in Hambrick v.

(continued...)

We therefore must examine the factors for collateral estoppel. We easily dispense with the first--petitioner was party to the prior litigation as debtor. The harder question is whether the issue of his total tax liability--which is the issue before us in a deficiency proceeding--is identical to the issue decided in the consent order. To answer that question we must consider the authority under which the consent order was entered.

A bankruptcy court has broad authority to hear and determine all "core proceedings" arising under title 11 of the United States Code (Bankruptcy Code) and "enter appropriate orders and judgments" related thereto. 28 U.S.C. secs. 157(b), 1334 (2018). Specifically, a bankruptcy court may "allow" or disallow claims against the bankruptcy estate and may estimate claims and interests for the purpose of confirming a plan under chapter 11. 28 U.S.C. sec. 157(b)(1), (2)(B); 11 U.S.C. sec. 502(b) (2018). If a creditor files a "proof of claim", it is deemed allowed unless a party in interest objects, in which case the bankruptcy court then determines the amount of the claim. 11 U.S.C. sec. 502. In general, the confirmation of a bankruptcy plan "discharges the debtor from any debt that arose before the date of such confirmation". 11 U.S.C. sec. 1141(d)(1)(A).

_____

[3](...continued)
Commissioner, 118 T.C. 348 (2002), there was no final judgment on the merits as to petitioner's tax liability.

Thus, in a chapter 11 case, a garden-variety creditor recovers on a prepetition claim only by filing a proof of claim and, if necessary, litigating the merits of the claim. But a discharge under chapter 11 does not discharge a debtor who is an individual from any debt excepted from discharge under 11 U.S.C. sec. 523. 11 U.S.C. secs. 1141(d)(2), 523(a)(1)(A). And under 11 U.S.C. sec. 523(a)(1)(A) certain taxes are nondischargeable "whether or not a claim for such tax was filed or allowed".

In <u>United States v. Gurwitch (In re Gurwitch)</u>, 794 F.2d 584, 585 (11th Cir. 1986), the U.S. Court of Appeals for the Eleventh Circuit held that the "Bankruptcy Code makes clear under 11 U.S.C. § 1141(d)(2) that the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523." <u>See also</u> <u>id.</u> at 585-586 ("Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code."). There, even though the IRS filed a proof of claim for only a portion of the income and withholding taxes owing, and the confirmed plan provided for 100% payment of the filed claim, the IRS was not precluded by res judicata from later collecting additional withholding taxes for the same tax year. <u>Id.</u> Similarly, the U.S. Court of Appeals for the Tenth Circuit held that the IRS was not

precluded from assessing or collecting additional taxes beyond those provided for in the chapter 11 plan, where the IRS audited the debtor's tax return after the plan was confirmed and determined additional taxes were owed because those taxes were nondischargeable under 11 U.S.C. sec. 523. DePaolo v. United States (In re DePaolo), 45 F.3d 373, 377 (10th Cir. 1995).

In DePaolo, the IRS filed an initial proof of claim and, after negotiation with the debtor, jointly executed a stipulation outlining the amount of the allowed claim for several prepetition tax years (including 1986) that would be treated in the chapter 11 plan and filed an amended proof of claim to reflect the stipulated amount. The plan was confirmed without objection by the IRS, but after an audit, the IRS issued a notice of deficiency for additional taxes for 1986. The court rejected the debtor's argument that the events in the bankruptcy proceeding finally determined the debtor's total 1986 tax liability, reasoning:

> While principles of res judicata apply generally to bankruptcy proceedings, the plain language of * * * [11 U.S.C. secs. 1141 and 523] forbid the application of those principles to the facts of this case. By expressly providing that the described taxes are not discharged "whether or not a claim for such taxes was filed or allowed," 11 U.S.C. § 523(a)(1)(A) (emphasis added), Congress has determined that the IRS may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, then audit and make additional claims for that same year, even though such conduct may seem inequitable or impair the debtor's fresh start.

Id. at 376.

In a case involving facts very similar to DePaolo, this Court held that the IRS was not estopped from determining deficiencies that could result in liabilities for the same tax year greater than those the IRS claimed in a taxpayer's confirmed chapter 11 bankruptcy plan. Hambrick v. Commissioner, 118 T.C. at 353-354. In Hambrick we held that res judicata did not apply because the bankruptcy court did not enter a final judgment on the merits of the taxpayer's tax liability in the process of confirmation. Id. at 353 ("Without a final judgment on the merits, res judicata cannot apply."). In so holding we noted the lack of a hearing pursuant to 11 U.S.C. sec. 505 (2018) to determine the tax debt because the taxpayer never objected to the proof of claim filed by the IRS. Id. We also held that because the merits of the taxpayer's tax liability were not actually litigated and there was no indication that the plan was confirmed on the basis of the underlying merits of the tax debts, collateral estoppel did not preclude the IRS from issuing its post confirmation notices of deficiency for additional prepetition taxes. Id.

But we also have recognized the preclusive effect of a bankruptcy court determination, holding that collateral estoppel prevented the IRS from determining Federal tax deficiencies for tax years when a bankruptcy court had previously determined that the taxpayer had no Federal income tax liabilities for those years.

McQuade v. Commissioner, 84 T.C. 137, 146 (1985). In McQuade the bankruptcy court held a trial on the tax liabilities for the years at issue and entered findings of fact and conclusions of law determining that the taxpayer had no tax liabilities. Id. at 139-140, 142. We also have held that a judgment entered by a bankruptcy court dismissing a corporate taxpayer's objection to the IRS' income tax claim and allowing the tax claim in full precluded the taxpayer from relitigating the tax liabilities of the same tax years. Fla. Peach Corp. v. Commissioner, 90 T.C. 678.

Critically, in both McQuade and Fla. Peach Corp. the bankruptcy court was acting pursuant to its authority granted by 11 U.S.C. sec. 505(a)(1), which provides that a bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

Petitioner does not dispute that the taxes at issue are nondischargeable under the Bankruptcy Code; rather he argues that the consent order binds respondent because it was issued pursuant to the bankruptcy court's authority to determine taxes under 11 U.S.C. sec. 505 and therefore fixed petitioner's tax liabilities for the years before the bankruptcy court. In oral argument the parties agreed that the question we must decide is whether the consent order was issued

under the bankruptcy court's general authority to decide creditor claims and approve plans of reorganization or its specific authority to determine taxes under 11 U.S.C. sec. 505.

The parties have not cited, nor did we find, any cases that explain the preclusive effect of a bankruptcy court's consent order on a subsequent tax proceeding. The closest published case identified by the parties is In re Matunas, 261 B.R. 129 (Bankr. D.N.J. 2001). In that case the parties entered into a stipulation agreement that addressed all outstanding tax liabilities for the relevant years. Id. at 131. It set forth the amounts of the IRS' secured and unsecured priority claims to be paid and prescribed payment deadlines. It also explained that the debtors' plan made no provision for payment of the IRS' unsecured general claims. The IRS retained refunds owed the debtors, and the debtors made payments that together exceeded the total of the claims that the parties had agreed would be paid in the settlement agreement. When the debtors objected, the IRS first agreed to refund the excess but then advised the debtors that it would not because it had determined that its proof of claim, which formed the basis of the stipulation agreement, did not include the debtors' tax liability for 1993. The debtors sued to enforce the terms of the bankruptcy plan. The bankruptcy court held that the IRS was barred from relitigating the claims resolved in the stipulation

agreement, concluding that the agreement had the effect of a judgment on the merits under 11 U.S.C. sec. 505(a)(1) and therefore had preclusive effect. In re Matunas, 261 B.R. at 135-136. The court's opinion did not include the text of the stipulation agreement or analyze the specific terms that led the court to conclude that it should give it the effect of a judgment of the bankruptcy court on the merits.

We now turn to what the consent order before us did and did not do. First, the consent order did not cite 11 U.S.C. sec. 505(a)(1) or otherwise state that it was issued pursuant to the bankruptcy court's authority to determine taxes under that section. Nor did it include any factual recitations of petitioner's income, deductions, and credits, or anywhere state his total Federal tax liability for any year before the court. Rather it was expressly entered to resolve the IRS' objection to confirmation of the proposed plan of reorganization. By its terms, it: (1) fixed the priority tax claim that would be allowed and paid in the plan of reorganization; (2) capped the unsecured general claim for penalties and described how this disputed claim would be treated under the plan of reorganization; (3) set a hearing date for the adjudication of the unsecured general claim; (4) set a deadline for petitioner to comply with tax return reporting requirements for certain tax years--including those prepetition years that are the subject of this Tax Court proceeding; and (5) modified the plan of reorganization to include a default

provision. Indeed, petitioner objected to the IRS' proof of claim only insofar as he did not believe penalties were owed, and the consent order explicitly left that objection pending. Nowhere did the consent order state that it was intended to determine petitioner's total prepetition Federal tax liability. And there is no indication that the IRS agreed to waive any of its unique rights under the Bankruptcy Code with respect to the tax debts that were excepted from discharge "whether or not a claim for such tax was filed or allowed". 11 U.S.C. secs. 1141(d)(2), 523(a)(1)(A). We therefore see no basis for concluding that the consent order had the effect of a determination under 11 U.S.C. sec. 505.

If the consent order had fixed petitioner's total Federal tax liability for the subject tax years, as petitioner asserts, then it would have preclusive effect. See Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 378 (1992); see also Paradise v. Prescott, 767 F.2d 1514, 1525 (11th Cir. 1985), aff'd sub nom. United States v. Paradise, 480 U.S. 149 (1987). But unlike McQuade and Fla. Peach Corp., the bankruptcy court in this case was not acting under its authority to determine taxes under 11 U.S.C. sec. 505(a), and there is no indication that the court was inquiring into the merits of petitioner's Federal tax liability for a particular year or making a determination as to total tax for that year. Compare McQuade v. Commissioner, 84 T.C. at 139-140, 142 ("[E]vidence of her tax liability for the years at bar were

introduced into evidence in the prior litigation, and the court made a determination of her income tax liabilities."), with Fla. Peach Corp. v. Commissioner, 90 T.C. 678 (determining that the bankruptcy court's judgment under 11 U.S.C. sec. 505 contained findings of fact and conclusions of law about each year's tax liability).

Petitioner argues that Int'l Bldg. Co. controls the outcome of this case. We disagree. In that case the taxpayer and the IRS settled their Tax Court case and that settlement constituted a final determination of the taxpayer's liabilities for the years before the Tax Court. Int'l Bldg. Co., 345 U.S. at 505-506; see also sec. 6214; Krueger v. Commissioner, 48 T.C. 824, 828-830 (1967). By contrast, the bankruptcy court in this case resolved the amount of the IRS' claim to be allowed in the plan of reorganization. That does not constitute a final determination of Federal tax liabilities for the years covered by the claim because the IRS is given express authority to determine additional liability for nondischargeable debts under 11 U.S.C. secs. 1141 and 523. See DePaolo, 45 F.3d at 376 (holding that stipulation of IRS' allowed claim in a chapter 11 case does not preclude IRS from determining deficiencies postconfirmation for additional nondischargeable taxes from the same tax years covered by stipulation). Thus, respondent was not required to raise the $45 million tax deficiency in the 2009 bankruptcy so long as the tax was not dischargeable (and petitioner does not argue that it was). Cf.

Hemmings v. Commissioner, 104 T.C. 221, 231-232, 234-235 (1995) (explaining compulsory counterclaims and holding that no compulsory counterclaim arises until a notice of deficiency is issued).

Lastly, the parties direct us to two orders entered by the bankruptcy court in the 2009 bankruptcy that examined the effect of the consent order, reaching different conclusions. First, in an order entered July 5, 2012 (2012 bankruptcy court order), the bankruptcy court denied the IRS' attempts to amend its claim to include additional taxes and penalties for the years covered by the consent order. The bankruptcy court stated:

> In this case, the Court finds that the Consent Order, and not the confirmed plan, is the controlling document as to the extent of the Debtor's tax obligation to the IRS. The Consent Order contains a clear statement of the total IRS claim amount and divides that amount into priority and general unsecured values. Its terms were negotiated by the Debtor and the IRS and approved by this Court. The Consent Order settled a confirmation dispute and the IRS had notice. Moreover, by its terms, the Consent Order appears binding and complete. No specific limitation on the Consent Order's effect is indicated in its terms. The IRS did not reserve the right to assert additional claims. Indeed, the Consent Order did not reserve any rights to the IRS, only to the Debtor. The purpose of the Consent Order is unclear if it was not meant to bind the IRS to its terms.

The court also concluded that whether the taxes at issue were dischargeable did not matter:

The dischargeability of the tax debts pursuant to * * * [11 U.S.C. sec. 523] would only be relevant if the confirmed plan, and not the Consent Order, operated as a determination of the debtor's tax liability. As such, the issue is not whether the tax debts are nondischargeable. The issue is whether the Consent Order's treatment, characterization, and limitation of the tax debt owed by the Debtor controls. This Court finds that it does. The IRS is bound by the terms of the Consent Order which sets out the amount and character of the tax debt at issue.

The bankruptcy court concluded that Int'l Bldg. Co. and In re Matunas applied, not Gurwitch.

In an order entered May 27, 2016 (2016 bankruptcy court order), the court denied petitioner's motion for attorney's fees.[4]  The court concluded that at the time the IRS pursued the litigation to amend its claim it was justified in thinking that res judicata might attach to nondischargeable prepetition tax debt regardless of the consent order because the IRS had discovered the liability before petitioner's objection to the IRS' claim had been adjudicated. Two cases were pending before the U.S. Court of Appeals for the Eleventh Circuit around the time the IRS sought leave to amend its claim in the 2009 bankruptcy:  Fla. Dep't of

---

[4] We note that the bankruptcy court judge who entered the consent order and the 2012 bankruptcy court order retired, and the 2016 bankruptcy court order was entered by a different bankruptcy court judge. We do not consider this fact relevant to our analysis of the import of the consent order.

Revenue v. Diaz (In re Diaz), 647 F.3d 1073 (11th Cir. 2011), and Fla. Dep't of

Revenue v. Davis (In re Davis), 481 F. App'x 492 (11th Cir. 2012).

In In re Diaz, 647 F.3d at 1080, the debtor objected to the proof of claim

filed by the Florida Department of Revenue (FL DOR) for past-due child support,

the FL DOR did not respond to the objection within 30 days, and the bankruptcy

court deemed the objection unopposed and ordered the claim reduced to the

amount in the debtor's objection.  The Court of Appeals held that the FL DOR was

not precluded from pursuing nondischargeable child support debts after a chapter

13 bankruptcy discharge order had been issued because discharge does not prevent

collection of nondischargeable debts.  Id. at 1089-1091.  In addition the Court of

Appeals held that the doctrines of res judicata and collateral estoppel did not bar

the State from litigating the amount of child support debt because the only issue

before the bankruptcy court in entering its order was the amount of the child-

support debt that would be paid by the bankruptcy estate through the plan, not the

total child-support debt.  Id. at 1090-1092 (explaining that the bankruptcy court's

order sustaining the claim objection and reducing the allowed claim was not an

adjudication of the total amount of the debt).  In so holding the Court of Appeals

stated that the rationale in Gurwitch and DePaolo--cases dealing with

nondischargeable taxes--applied with equal force in the context of child-support obligations. Id.

In Davis, the Court of Appeals applied the same principles as in Diaz and DePaolo to conclude that the FL DOR was not precluded from pursuing a claim for child support even though the bankruptcy court had previously disallowed the claim as untimely because the FL DOR filed its proof of claim after the chapter 11 bankruptcy plan was confirmed. Davis, 481 F. App'x 492-494. The Court of Appeals specifically held:

> The scope of the bankruptcy court's review of the issue of liability for non-dischargeable obligations is limited to liability in the context of a bankruptcy plan. As such, the bankruptcy court may disallow a claim during the proceeding, but neither the discharge injunction nor principles of preclusion bar the * * * [FL DOR] or another child support creditor from pursuing the debt post-bankruptcy.

Id. at 495 (citation omitted).

In the 2016 bankruptcy court order, the bankruptcy court summarized the holdings of these cases as follows:

> [T]he IRS is entitled to collect the full amount of any statutorily nondischargeable tax debt owed by a debtor regardless of whether the debtor and the IRS consent to a lesser amount during a debtor's bankruptcy case, or whether the IRS even files a claim in a debtor's bankruptcy case. Thus, if a debtor's tax debt is statutorily nondischargeable under § 523, then the IRS is entitled to collect the full amount of that debt regardless of how it is treated in a debtor's bankruptcy case.

And because the IRS did not yet know how the Court of Appeals would decide the issue, the bankruptcy court concluded that the IRS' litigation position was substantially justified and denied petitioner's motion for attorney's fees.

Petitioner rejects this later interpretation of the consent order, arguing that it addressed an unrelated issue (attorney's fees) and that neither the bankruptcy court nor the District Court reviewing the bankruptcy court's order could rule on the preclusive effect of the consent order in a later Tax Court proceeding. Of course that logic would apply equally to the 2012 bankruptcy court order, whose interpretation petitioner favors. We agree that the 2012 bankruptcy court order and the 2016 bankruptcy court order are not binding because the bankruptcy court did not have the issue properly before it and could not have decided the preclusive effect of the consent order in a later Tax Court proceeding. Indeed, when the District Court affirmed the 2012 bankruptcy court order, it specifically stated: "[W]hether the I.R.S. may later have a claim or whether the Consent Order is res judicata as to a later administrative tax claim are not issues before the court." United States v. Breland, No. 12-00512, 2012 WL 7062613, at *1 (S.D. Ala. Dec. 27, 2012).

Moreover, we believe that the bankruptcy court's subsequent rejection of the IRS' efforts to amend its claim was consistent with what the consent order

did--determine the amount of the IRS' claim to be paid by the bankruptcy estate under the plan of reorganization. Because the consent order determined the amount of the claim in the bankruptcy case, the court concluded that whether the taxes were dischargeable was not relevant in deciding whether amendment should be allowed. However, the nondischargeability of certain tax debts is relevant when the claim treated under the bankruptcy plan does not include the entire prepetition Federal tax debt of the taxpayer and the IRS wishes to pursue the deficiency.

In sum, we agree that respondent was bound by the terms of the consent order; but because the consent order was not a determination of petitioner's Federal tax liability for each tax year at issue, respondent is not precluded from determining deficiencies for unpaid tax debts that are excepted from discharge under the Bankruptcy Code, and we may decide the matter in a deficiency proceeding. We hold that res judicata does not apply because the consent order is not a final judgment on the merits of petitioner's entire Federal tax debt for any given year.[5] Relatedly, we hold that collateral estoppel does not apply because

_____

[5] Our interpretation and consideration of 11 U.S.C. secs. 523(a) and 1141(d)(2) (2018) does not, however, render the consent order essentially meaningless, which was a concern articulated by the court in In re Matunas, 261 B.R. 129, 134-135 (Bankr. D.N.J. 2001). The consent order, among other things,

(continued...)

there is no indication that petitioner's total Federal tax liability was ever actually litigated or even at issue before the bankruptcy court. See Hambrick v. Commissioner, 118 T.C. at 354 (explaining that for collateral estoppel to apply, "the parties must actually have litigated the issues, and the resolution of these issues must have been essential to the prior decision"). We will therefore deny petitioner's motion for summary judgment.

To reflect the foregoing,

An appropriate order will be issued.

---

[5](...continued) resolved the IRS' priority claim that would be paid by the estate under the terms of the plan, established a procedure for resolving disputes about respondent's general unsecured claims for penalties, modified the plan by adding a provision relating to default, and set a deadline for petitioner to comply with certain tax reporting requirements.