*PRELIMINARY PRINT*

VOLUME 598 U. S. PART 2

PAGES 432–448

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

MAY 18, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# POLSELLI ET AL. *v.* INTERNAL REVENUE SERVICE

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 21–1599. Argued March 29, 2023—Decided May 18, 2023

The Internal Revenue Service has the power to issue summonses to pursue unpaid federal taxes and the people who owe them. When the IRS issues a summons, it must generally provide notice to any person identified in the summons, 26 U. S. C. § 7609(a)(1). Anyone entitled to such notice may then bring a motion to quash the summons, § 7609(b)(2)(A). But when the IRS issues a summons "in aid of the collection of . . . an assessment made . . . against the person with respect to whose liability the summons is issued," no notice is required, § 7609(c)(2)(D)(i).

In this case, the IRS entered official assessments against Remo Polselli for more than $2 million in unpaid taxes and penalties. Revenue Officer Michael Bryant issued summonses to three banks seeking financial records of several third parties, including petitioners, who then moved to quash the summonses. The District Court concluded that, under § 7609(c)(2)(D)(i), no notice was required and that petitioners therefore could not bring a motion to quash. The Sixth Circuit affirmed, finding that the summonses fell squarely within the exception in § 7609(c)(2)(D)(i) to the general notice requirement.

*Held*: The Court rejects petitioners' argument that the exception to the notice requirement in § 7609(c)(2)(D)(i) applies only if the delinquent taxpayer has a legal interest in the accounts or records summoned by the IRS. Pp. 438–445.

(a) The statute sets forth three conditions to exempt the IRS from providing notice in circumstances like these. First, a summons must be "issued in aid of . . . collection," § 7609(c)(2)(D). Second, it must aid the collection of "an assessment made or judgment rendered," § 7609(c)(2)(D)(i). Third, a summons must aid the collection of assessments or judgments "against the person with respect to whose liability the summons is issued," § 7609(c)(2)(D)(i). The statute does not mention legal interest, much less require that a taxpayer maintain such an interest for the exception to apply. Pp. 438–439.

(b) Petitioners' arguments in support of their proposed legal interest test do not convince the Court to abandon an ordinary reading of the notice exception. Petitioners first contend the phrase "in aid of the collection" refers only to inquiries that "directly advance" the IRS's collection efforts, which a summons will not accomplish unless it is targeted

at an account containing assets that the IRS can collect to satisfy the taxpayer's liability. This argument ignores the typical meaning of "in aid of." To "aid" means "[t]o help" or "assist." A summons that may not itself reveal taxpayer assets that can be collected may nonetheless help the IRS find such assets.

Petitioners next argue that if § 7609(c)(2)(D)(i) is read to exempt from notice every summons that helps the IRS collect an "assessment" against a delinquent taxpayer, there would be no work left for the second exception to notice, found in § 7609(c)(2)(D)(ii), to do. Clause (ii) exempts from notice any summons "issued in aid of the collection of . . . the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i)." The two clauses apply in different circumstances: clause (i) applies upon an *assessment*, while clause (ii) applies upon a finding of *liability*. In addition, clause (i) concerns delinquent taxpayers, while clause (ii) concerns transferees or fiduciaries. As a result, clause (ii) permits the IRS to issue unnoticed summonses to aid its collection from transferees or fiduciaries *before* it makes an official assessment of liability. Pp. 439–443.

(c) The Court does not dismiss any apprehension about the scope of the IRS's power to issue summonses and does not define the precise contours of the phrase "in aid of the collection." The briefing by the parties and the question presented focus only on whether § 7609(c)(2)(D)(i) requires that a taxpayer maintain a legal interest in records summoned by the IRS. The answer is no. Pp. 443–445.

23 F. 4th 616, affirmed.

ROBERTS, C. J., delivered the opinion for a unanimous Court. JACKSON, J., filed a concurring opinion, in which GORSUCH, J., joined, *post*, p. 445.

*Shay Dvoretzky* argued the cause for petitioners. With him on the briefs were *Parker Rider-Longmaid, Kyser Blakely, Raza Rasheed, Maurice A. Rose,* and *Jerry Abraham.*

*Ephraim A. McDowell* argued the cause for respondent. With him on the brief were *Solicitor General Prelogar, Deputy Assistant Attorney General Hubbert, Deputy Solicitor General Gannon, Francesca Ugolini,* and *Michael J. Haungs.**

———————

*Briefs of *amici curiae* urging reversal were filed for the Center for Taxpayer Rights et al. by *Melissa Arbus Sherry, Amy Feinberg, Eric J. Konopka,* and *David D. Cole*; for the Chamber of Commerce of the United

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

For as long as Americans have had to pay taxes, at least some have tried to avoid them. And for as long as Americans have avoided taxes, the Internal Revenue Service and its predecessors have tried to collect them. As an old joke goes: "I believe we should all pay taxes with a smile. I tried but they wanted cash."

Congress has given the IRS considerable power to go after unpaid taxes. One tool at the Service's disposal is the authority to summon people with information concerning a delinquent taxpayer. But to safeguard privacy, the IRS is generally required to provide notice to anyone named in a summons, who can then sue to quash it. Today's case concerns an exception to that general rule.

I

To pursue unpaid taxes and the people who owe them, "Congress has granted the Service broad latitude to issue summonses." *United States* v. *Clarke*, 573 U. S. 248, 250 (2014). Among other things, the IRS may issue a summons to "determin[e] the liability" of a taxpayer or "any transferee or fiduciary" for unpaid taxes. 26 U. S. C. § 7602(a). The IRS also may serve a summons to "collec[t] any such liability." *Ibid.* These summonses can extend to third parties beyond the taxpayer under investigation. *Tiffany Fine Arts, Inc.* v. *United States*, 469 U. S. 310, 315–316 (1985). Accordingly, the IRS may request the production of "books, papers, records, or other data" from "any person" who

States of America by *Carter G. Phillips* and *William R. Levi*; for the Institute for Justice by *Paul Sherman, Joshua Windham,* and *Robert E. Johnson*; for the National Taxpayers Union Foundation by *Tyler Martinez* and *Joseph D. Henchman*; and for The Rutherford Institute et al. by *Michael B. Kimberly, Ethan H. Townsend, John W. Whitehead, Clark M. Neily III,* and *Matthew P. Cavedon.*

possesses information concerning a delinquent taxpayer. § 7602(a)(2).

Given the breadth of this power, Congress has imposed certain safeguards. The IRS must generally give "notice of the summons" to "any person . . . identified in the summons." § 7609(a)(1). Anyone entitled to notice can bring a motion to quash the summons. § 7609(b)(2)(A). And the Internal Revenue Code provides district courts with "jurisdiction to hear and determine any proceeding" concerning a motion to quash, § 7609(h)(1), thereby waiving the sovereign immunity of the United States, see *FAA* v. *Cooper*, 566 U. S. 284, 290 (2012).

There are, however, exceptions to the notice requirement. As relevant, the IRS need not provide notice to a person "who is identified in the summons," § 7609(a)(1), if the summons is:

> "issued in aid of the collection of—
>
> "(i) an assessment made or judgment rendered against the person with respect to whose liability the summons is issued; or
>
> "(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i)." § 7609(c)(2)(D).

In other words, the IRS may issue summonses both to determine whether a taxpayer owes money and later to collect any outstanding liability. When the IRS conducts an investigation for the purpose of "determining the liability" of a taxpayer, § 7602(a), it must provide notice, § 7609(a)(1). But once the Service has reached the stage of "collecting any such liability," § 7602(a)—which is a distinct activity—notice may not be required, § 7609(c)(2)(D).

## II

For multiple years between 2005 and 2017, Remo Polselli underpaid his federal taxes. App. to Pet. for Cert. 65a–66a.

After investigating, the IRS determined that Mr. Polselli was liable for the unpaid amounts and other penalties, and entered official assessments against him totaling more than $2 million. *Id.*, at 66a. Revenue Officer Michael Bryant then set out to collect the money, and he developed a few leads in his search for assets that Mr. Polselli may have been concealing. Bryant focused on bank accounts belonging to Mr. Polselli's wife, petitioner Hanna Karcho Polselli. *Ibid.* Bryant also knew that Mr. Polselli had paid nearly $300,000 toward part of his outstanding tax liability from an account owned by Dolce Hotel Management, LLC, and surmised that Mr. Polselli might have control over funds belonging to that company. *Id.*, at 67a. To further his investigation, Bryant issued a summons under § 7602 to the law firm Abraham & Rose, PLC, where Mr. Polselli had long been a client. *Ibid.* But the firm produced no records in response, stating that it "did not retain any of the documents requested." *Ibid.*

Bryant then issued several additional summonses seeking records concerning Mr. Polselli. Bryant issued one summons to Wells Fargo, requesting the financial records of both Mrs. Polselli and Dolce Hotel Management. *Id.*, at 70a–71a. He also issued summonses to JP Morgan Chase and Bank of America, seeking among other things "[c]opies of all bank statements" relating to Mr. Polselli and petitioners Jerry R. Abraham, P. C., and Abraham & Rose, PLC. *Id.*, at 78a–79a, 85a–86a. Bryant did not provide notice to any of the third parties named in the three summonses. But the banks did, and Mrs. Polselli, Jerry R. Abraham, and Abraham & Rose filed motions to quash in Federal District Court.

The District Court dismissed the case for lack of subject-matter jurisdiction, reasoning that the IRS did not need to provide notice. *Polselli* v. *United States*, 2020 WL 12688176, *4 (ED Mich., Nov. 16, 2020). The District Court credited Bryant's assertions that "the purpose of his investigation [was] to locate assets to satisfy Mr. Polselli's existing assessed federal tax liability and that the IRS issued the

summonses in question to aid in the collection of these assessed liabilities." *Ibid.* Because the Code excluded petitioners from the required notice, there was no waiver of sovereign immunity, and the District Court therefore lacked jurisdiction to entertain the motions to quash. *Id.*, at *5.

The Sixth Circuit affirmed in a divided opinion, reasoning that no notice was required because "the summonses at issue fall squarely within the exception listed in § 7609(c)(2)(D)(i)." *Polselli* v. *Department of Treasury–IRS*, 23 F. 4th 616, 623 (2022). Before the Sixth Circuit, petitioners had argued in favor of a rule—previously adopted by the Ninth Circuit—requiring that a taxpayer have "some legal interest or title in the object of the summons" for the notice exception to apply. *Ip* v. *United States*, 205 F. 3d 1168, 1175 (2000). To decide whether a taxpayer maintains a sufficient legal interest "in the object of the summons," the Ninth Circuit considers "whether there was an employment, agency, or ownership relationship between the taxpayer and third party." *Viewtech, Inc.* v. *United States*, 653 F. 3d 1102, 1106 (2011). But the Sixth Circuit below rejected the Ninth Circuit's legal interest test, concluding that it was contrary to the plain language of § 7609(c)(2)(D)(i). 23 F. 4th, at 625. The panel below instead held that "as long as the third-party summons is issued to aid in the collection of any assessed tax liability the notice exception applies." *Id.*, at 624 (internal quotation marks omitted). In so concluding, the Sixth Circuit aligned itself with both the Seventh and Tenth Circuits. See *Davidson* v. *United States*, 149 F. 3d 1190 (CA10 1998) (Table); *Barmes* v. *United States*, 199 F. 3d 386 (CA7 1999) (*per curiam*).

Judge Kethledge dissented. He acknowledged that an ordinary reading of the statute exempted the summonses from notice but thought the statutory context compelled a narrower construction. As an initial matter, Judge Kethledge expressed concern that the panel's reading of the notice exception risked "a significant intrusion upon the privacy of

. . . account holders." 23 F. 4th, at 631. He argued that an ordinary reading of the first exception to notice would render the second exception—codified in §7609(c)(2)(D)(ii)—"superfluous." *Ibid.* To avoid that, Judge Kethledge would have narrowed the first exception by adopting the legal interest test from the Ninth Circuit. We granted certiorari to resolve the division among the Circuits. 598 U. S. —— (2022).

## III

The question presented is whether the exception to the notice requirement in §7609(c)(2)(D)(i) applies only where a delinquent taxpayer has a legal interest in accounts or records summoned by the IRS under §7602(a). A straightforward reading of the statutory text supplies a ready answer: The notice exception does not contain such a limitation.

## A

The statute sets forth three conditions to exempt the IRS from providing notice in circumstances like these. First, a summons must be "issued in aid of . . . collection." §7609(c)(2)(D). Second, it must aid the collection of "an assessment made or judgment rendered." §7609(c)(2)(D)(i). By "assessment," the Code "refers to the official recording of a taxpayer's liability." *Direct Marketing Assn.* v. *Brohl*, 575 U. S. 1, 9 (2015); see also *Hibbs* v. *Winn*, 542 U. S. 88, 100 (2004). Section 7609(c)(2)(D)(i) does not excuse notice, therefore, until the IRS makes an official assessment or a judgment has been rendered with respect to a taxpayer's liability. Third, a summons must aid the collection of assessments or judgments "against the person with respect to whose liability the summons is issued." §7609(c)(2)(D)(i). This requirement links the subject of the assessment or judgment with the subject of the collection effort—they must concern the same delinquent taxpayer. None of the three components for excusing notice in §7609(c)(2)(D)(i) mentions a taxpayer's legal interest in records sought by the IRS,

much less requires that a taxpayer maintain such an interest for the exception to apply.

Had Congress wanted to include a legal interest requirement, it certainly knew how to do so. The very next provision—also enacted as part of the Tax Reform Act of 1976—requires the IRS to "establish the rates and conditions" for reimbursing costs "incurred in searching for, reproducing, or transporting" information sought by a summons. § 7610(a)(2); see 90 Stat. 1702. But the IRS may not provide reimbursement if "the person with respect to whose liability the summons is issued has a proprietary interest in" the records "to be produced." § 7610(b)(1). We assume that Congress "acts intentionally and purposely" when it "includes particular language in one section of a statute but omits it in another section of the same Act." *Sebelius* v. *Cloer*, 569 U. S. 369, 378 (2013) (internal quotation marks omitted). The fact that the exception to the reimbursement provision expressly turns on a taxpayer's "proprietary interest" in records summoned by the IRS strongly suggests that Congress deliberately omitted a similar requirement with respect to the notice exception in § 7609(c)(2)(D)(i). And here the provision in question is not just in the "same Act"—it is in the adjacent section, having been enacted in the same Public Law.

B

Petitioners advance two primary arguments in support of their proposed legal interest test, neither of which convinces us to abandon an ordinary reading of the notice exception.

First, petitioners adopt a narrow definition of "in aid of the collection." In their view, the phrase refers only to inquiries that "directly advance" the IRS's collection efforts. Brief for Petitioners 21. A summons will not directly advance those efforts, they contend, unless it is targeted at an account containing assets that the IRS can collect to satisfy the taxpayer's liability. And, petitioners say, the only way that a summons issued to a third party will produce collect-

ible assets is if the delinquent taxpayer has a legal interest in the targeted account.

This argument does not give a fair reading to the phrase "in aid of the collection." According to petitioners, the phrase requires that a summons produce collectible assets. But to "aid" means "[t]o help" or "assist." American Heritage Dictionary 26 (1969). Petitioners agree. See Brief for Petitioners 21 ("aid" means to "support," "help," or "assist"). Even if a summons may not itself reveal taxpayer assets that can be collected, it may nonetheless help the IRS find such assets.

Consider this case. The IRS's investigation "suggest[ed] that Mr. Polselli often uses other entities to shield assets from the Internal Revenue Service." App. to Pet. for Cert. 68a. Bryant suspected, for instance, that Mr. Polselli was using Dolce Hotel Management as an alter ego, and also that he might have access to and use of Mrs. Polselli's bank accounts. Based on those leads, Bryant initially requested that Abraham & Rose produce "cancelled checks, wire transfer/credit documents, and all other instruments used by Mr. Polselli to pay the firm." *Id.*, at 67a. Whether Mr. Polselli maintains a "legal interest" in those records—a confounding question, see *Viewtech*, 653 F. 3d, at 1106—is neither here nor there. The IRS could not, of course, use records of canceled checks and the like to satisfy Mr. Polselli's tax deficiency. But if those records showed that money from Dolce Hotel Management was used to pay Mr. Polselli's account at Abraham & Rose, or to pay others through Abraham & Rose, that could aid in collecting funds from Dolce Hotel Management to help pay Mr. Polselli's debt to the IRS. Or the Service could use those records to try to identify other alter egos—besides Dolce Hotel Management—where Mr. Polselli might have hidden assets.

By the same token, the summonses Bryant issued to the three banks sought records to "identify . . . entities whose funds Mr. Polselli has control over without formal owner-

ship" and "bank accounts associated with such entities."
App. to Pet. for Cert. 68a. As with the request Bryant is-
sued to Abraham & Rose, even if the three bank summonses
did not reveal bank accounts in which Mr. Polselli has a legal
interest, they could lead to assets parked elsewhere that the
IRS could collect to satisfy his $2 million liability.

IRS investigations are much like any other: A detective
might order forensic testing or speak to witnesses to help
identify a culprit, even if those activities are unlikely—in and
of themselves—to solve the crime. Similarly, documents in
the accounts belonging to Mrs. Polselli or Dolce Hotel Man-
agement may be a step in a paper trail leading to assets
owned by Mr. Polselli. Everyday tasks illustrate the same
point: A recipe might help a chef shop for needed groceries,
even though more steps are required before dinner will be
ready. By conflating activities that help advance a goal with
activities sure to accomplish it, petitioners ignore the typical
meaning of "in aid of."

Petitioners next argue that the exception provided in
clause (i) must be read narrowly so as to avoid making en-
tirely superfluous the exception found in clause (ii). Clause
(i) excuses notice when the IRS issues a summons "in aid of
the collection of . . . an assessment made or judgment ren-
dered against" the delinquent taxpayer. § 7609(c)(2)(D)(i).
Clause (ii) exempts from notice any summons "issued in aid
of the collection of . . . the liability at law or in equity of any
transferee or fiduciary of any person referred to in clause
(i)." § 7609(c)(2)(D)(ii). We ordinarily aim to "giv[e] effect
to every clause and word of a statute." *Microsoft Corp.* v.
*i4i L. P.*, 564 U. S. 91, 106 (2011) (internal quotation marks
omitted). If clause (i) already exempts from notice every
summons that helps the IRS collect an "assessment" against
a delinquent taxpayer, petitioners argue, there would be no
work left for clause (ii) to do. Adding a "legal interest" re-
quirement, on the other hand, would cabin the scope of clause
(i), leaving some purpose for clause (ii).

But this argument overlooks two differences between clause (i) and clause (ii). First, clause (i) is applicable upon an *assessment*, while clause (ii) is applicable upon a finding of *liability*. Under the Code, a taxpayer's "liability" for unpaid taxes arises before the IRS makes an official "assessment" of what the delinquent taxpayer owes. See § 6203 ("The assessment shall be made by recording the liability of the taxpayer . . . ."); see also *United States* v. *Galletti*, 541 U. S. 114, 122 (2004) (assessment refers to "the calculation or recording of a tax liability"). Although an assessment may "trigge[r] levy and collection efforts," *Hibbs*, 542 U. S., at 101, the Code does not require in all cases that the IRS make a formal assessment before attempting to collect an outstanding tax liability. See §§ 6501(c)(1)–(3) (authorizing the IRS to bring "a proceeding in court for collection of [a] tax . . . without assessment" in situations involving false returns, willful attempts to evade taxes, and failures to file a return).

Second, petitioners' argument overlooks that clause (i) and clause (ii) are addressed to different entities. Clause (i) concerns assessments or judgments against a *taxpayer*—"the person with respect to whose liability the summons is issued." § 7609(c)(2)(D)(i). Clause (ii), in contrast, concerns the liability of a "transferee or fiduciary." § 7609(c)(2)(D)(ii). That the notice exception distinguishes between taxpayers and their fiduciaries or transferees should come as no surprise. The Code elsewhere separately empowers the IRS to collect outstanding tax liabilities from taxpayers, on the one hand, and from transferees or fiduciaries, on the other. See § 6901. The Code also differentiates between taxpayers and their fiduciaries or transferees in empowering the IRS to issue summonses in the first place. See § 7602(a).

These distinctions—between liability and assessment or judgment, and between taxpayers and their transferees or fiduciaries—are not just academic. They show that the second notice exception found in clause (ii) applies in situations

where clause (i) may not. To dispense with notice, clause (i) requires that there be "an assessment made or judgment rendered against the person with respect to whose liability the summons is issued." §7609(c)(2)(D)(i). By contrast, clause (ii) does not impose the same conditions. It instead authorizes the IRS to issue a summons in aid of collecting a "liability at law or in equity," and refers specifically to the liability of any "transferee or fiduciary" of the delinquent taxpayer. §7609(c)(2)(D)(ii). As a result, clause (ii) permits the IRS to issue unnoticed summonses to aid its collection from transferees or fiduciaries *before* it makes an "official recording of a taxpayer's liability." *Direct Marketing Assn.*, 575 U. S., at 9. "That may not be very heavy work for the phrase to perform, but a job is a job, and enough to bar the rule against redundancy from disqualifying an otherwise sensible reading." *Gutierrez* v. *Ada*, 528 U. S. 250, 258 (2000); see also *Nielson* v. *Preap*, 586 U. S. ——, —— (2019) (a clause that "still has work to do" is not superfluous).

Clause (ii) addresses an additional potential problem as well. Delinquent taxpayers sometimes declare bankruptcy or otherwise discharge debt. When they do so, the Government may not be able to collect "an assessment made or judgment rendered against the" taxpayer. §7609(c)(2)(D)(i). In those situations, clause (i) may not apply, for a summons cannot be "issued in aid of" an impossible collection effort. §7609(c)(2)(D). But clause (ii) may nevertheless permit the IRS to issue unnoticed summonses to collect the "liability" of the taxpayer's transferee or fiduciary. §7609(c)(2)(D)(ii).

IV

Petitioners also emphasize the privacy concerns that led Congress to enact the notice requirement in the first place. They highlight that "Congress enacted §7609 in response to two decisions in which we gave a broad construction to the IRS's general summons power." *Tiffany Fine Arts*, 469 U. S., at 314. In *Donaldson* v. *United States*, 400 U. S. 517

(1971), we considered whether the employee of a company to which the IRS had issued a summons could intervene to prevent his employer's compliance with the Service's request. *Id.*, at 527. We concluded that the employee had no right to do so. *Id.*, at 530. And in *United States* v. *Bisceglia*, 420 U. S. 141 (1975), we approved an IRS summons issued to a bank "for the purpose of identifying an unnamed individual who had deposited a large amount of money in severely deteriorated bills," concluding that the IRS had not abused its authority. *Tiffany Fine Arts*, 469 U. S., at 315 (characterizing *Bisceglia*).

*Donaldson* and *Bisceglia* help explain why Congress enacted § 7609, which establishes a baseline rule requiring the IRS to provide notice and which authorizes anyone entitled to notice to move to quash a summons. § 7609(a). But neither case obliges us to read the notice exception in § 7609(c)(2)(D)(i) more narrowly than its terms provide. We think the history highlighted by petitioners supports a contrary conclusion. That Congress proved acutely aware of our prior decisions supports a plain reading not only of the general notice requirement, but also of the specific exception the statute provides.

We do not dismiss any apprehension about the scope of the IRS's authority to issue summonses. As we have said, "the authority vested in tax collectors may be abused, as all power is subject to abuse." *Bisceglia*, 420 U. S., at 146. Tax investigations often involve the pursuit of sensitive records. In this case, for instance, the IRS sought information from law firms concerning client accounts. And even the Government concedes that the phrase "in aid of the collection" is not "limitless." Tr. of Oral Arg. 33. The Government proposes a test turning on reasonableness: So long as a summons is "reasonably calculated to assisting in collection," it can fairly be characterized as being issued "in aid of" that collection. *Id.*, at 26; see also *id.*, at 36 ("[T]he third party should have some financial ties or ha[ve] engaged in financial transactions with the delinquent taxpayer.").

JACKSON, J., concurring

This is not, however, the case to try to define the precise bounds of the phrase "in aid of the collection." The parties did not argue, and the panel below did not decide, the contours of that phrase. See *Illinois* v. *Gates*, 462 U. S. 213, 222–223 (1983). In addition, both the briefing by the parties and the question presented focus only on whether the exception provided in § 7609(c)(2)(D)(i) requires that a taxpayer maintain a legal interest in records summoned by the IRS. For the reasons we have given, the answer is no.

The judgment of the Court of Appeals for the Sixth Circuit is affirmed.

*It is so ordered.*

JUSTICE JACKSON, with whom JUSTICE GORSUCH joins, concurring.

The Court holds today that there is no "legal interest" limitation on the ability of the Internal Revenue Service to summon records without notice under 26 U. S. C. § 7609(c)(2)(D)(i). I agree. I write to emphasize two points I believe are critical to understanding that, despite our rejection of this particular limit, the summoning power of the IRS under that provision is circumscribed nonetheless.

*First*, while the need for efficient tax administration is certainly important and Congress has given the agency lots of attendant authority, the *default* rule when the IRS seeks information from third-party recordkeepers under this statute is notice. The IRS can summon "any books, papers, records, or other data" that "may be relevant or material to" determining a taxpayer's liability or collecting unpaid tax. §§ 7602(a)(1)–(2). And it can issue such summonses to "*any* . . . person the [IRS] may deem proper." § 7602(a)(2) (emphasis added). But, as a general matter, when the IRS issues a summons pursuant to this authority, the agency must provide notice to "any person . . . identified in the summons" and to whom "any portion of [the requested] records" relate. § 7609(a)(1) (imposing notice requirement as the "general" rule).

Notice is not a mere formality. In the context of tax administration, it serves an important function. Providing notice ensures that, when the IRS comes calling, the implicated interests are balanced. On one hand, the notice requirement permits the IRS to summon recordkeepers for the information it needs, without imposing overly burdensome procedural hurdles or inviting excessive delay. See, *e. g.*, §7609(a)(2) (allowing the IRS to serve notice by mail); §7609(b)(2) (setting time limitations on filing a motion to quash). On the other hand, notice—and the concomitant right to judicial review—empowers persons whose information is at stake to enlist assistance from the courts, as needed, to prevent the agency from overreaching. §7609(b); see also *Tiffany Fine Arts, Inc.* v. *United States*, 469 U. S. 310, 320–321 (1985).

To be sure, Congress has also recognized that there might be situations, particularly in the collection context, where providing notice could frustrate the IRS's ability to effectively administer the tax laws. For instance, upon receiving notice that the IRS has served a summons, interested persons might move or hide collectable assets, making the agency's collection efforts substantially harder.

*That* is where the exception at §7609(c)(2)(D)(i) comes in. In such circumstances, §7609(c)(2)(D)(i) prevents notice from tipping the balance entirely in favor of the delinquent taxpayer, at the expense of the IRS. But, depending on whose information the summons seeks (for example, an innocent third party's), or the nature of the requested records, it might not be reasonable to conclude that providing notice would frustrate the IRS's tax-collection goal. And when that is the case, it might unjustifiably tip the scales in the other direction (*i. e.*, entirely in the IRS's favor) to allow the IRS to proceed without notice just because its delinquency resolution process has entered the collection phase.

In other words, the statute's balancing of interests indicates that Congress did not give the IRS a blank check, so

JACKSON, J., concurring

to speak, to do with as it will in the collection arena. Thus, in my view, courts must not interpret § 7609(c)(2)(D)(i) as if that agency has been gifted with boundless authority. Treating the IRS's power to issue unnoticed summonses as effectively unlimited permits the exception to devour the rule, upsetting the statute's calibration.

*Second*, and similarly, it is hard for me to believe that, in the context of a default-notice system, Congress would intentionally insert an exception that could so dramatically upend its objectives. Read too broadly, § 7609(c)(2)(D)(i) would presumably permit the IRS to summon *anyone's* records without notice, no matter how broad the summons is or how potentially intrusive that records request might be, so long as the agency thinks doing so would provide a clue to the location of a delinquent taxpayer's assets.

Imagine, for example, a delinquent taxpayer who routinely visits his local mom-and-pop dry cleaning business. Imagine also that the IRS suspects this delinquent taxpayer sometimes uses credit cards with different names. Under a broad reading of § 7609(c)(2)(D)(i), I suppose the IRS could issue a summons to the dry cleaner's bank without notice to the dry cleaner, seeking years of the dry cleaner's financial records. The agency might believe that having the entirety of that business's financial information would aid its tax-collection efforts—even though the taxpayer has no known financial interest in that business, or any special relationship with the business's owners—because knowing what methods of payment (or aliases) the taxpayer regularly uses could help the agency track down the taxpayer's assets. And it might intend to sift through the requested haystack of the business's bank records in order to find the needle of the taxpayer's transaction information.

For their part, the dry cleaner's owners would probably look askance at having *all* of their financial records requisitioned and reviewed in this manner. But, without notice, they cannot object to the summons's scope or work with the

IRS (and the court) to provide the records that most likely involve the delinquent taxpayer or his aliases. The owners would have to rely on the recipient of the summons (the bank) to articulate their privacy concerns and negotiate with the agency. Yet there is no guarantee under the statute that the bank will do that, and even if it does, how is the bank supposed to identify which credit cards may have been used by the delinquent taxpayer over a multiyear period?

This situation seems to me to be the kind of circumstance in which Congress would not have intended to prevent the dry cleaning business from attempting to protect its interests. And, in my view, reading § 7609 to require notice—and the potential for judicial oversight—in relation to such attenuated tax-collection activities is entirely consistent with the statutory scheme. Conversely, allowing the agency to sidestep oversight of its broad summons power by not providing notice in these kinds of situations undermines the important aims of the default-notice system.

The bottom line is this: As I read the statute, the IRS is not necessarily exempt from notice obligations any time a tax-delinquency matter enters the collection phase. Rather, the exception in § 7609(c)(2)(D)(i) merely reflects Congress's determination that, in some situations, requiring the agency to provide notice in connection with its tax-collection efforts would undermine the balance that the statute strikes with its default-notice requirement. Consequently, I believe that both courts and the IRS itself must be ever vigilant when determining when notice is *not* required. Doing so properly involves a careful fact-based inquiry that might well vary from case to case, depending on the scope and nature of the information the IRS seeks.

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication
and citation style of the United States Reports. The revised pagination
makes available the official United States Reports citation in advance of
publication. The syllabus has been prepared by the Reporter of Decisions
for the convenience of the reader and constitutes no part of the opinion of
the Court. A list of counsel who argued or filed briefs in this case, and
who were members of the bar of this Court at the time this case was
argued, has been inserted following the syllabus. Other revisions may
include adjustments to formatting, captions, citation form, and any errant
punctuation. The following additional edits were made:

p. 432, line 4, "§ 7609(a)(1) '" is replaced with "26 U. S. C. § 7609(a)(1)"