[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-12345

Non-Argument Calendar

————————————————

CHARLES K. BRELAND, JR.,

                                                        Petitioner-Appellant,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

                                                        Respondent-Appellee.

————————————————

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 21940-12

————————————————

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

This case arises between a Chapter 11 debtor, Charles Breland, and one of his creditors, the Internal Revenue Service ("IRS"). In Breland's bankruptcy proceeding, Breland and the IRS entered a consent order, which set the amount of the IRS's tax claim against the bankruptcy estate and withdrew the IRS's objection to the reorganization plan. After the plan was confirmed, the IRS discovered additional taxes that Breland owed, and sent Breland notices of deficiency for those additional taxes. Breland objected to the notices of deficiency in the tax court, arguing that the consent order he signed with the IRS fixed his total tax liability for the years in question. The tax court rejected Breland's arguments at summary judgment, and Breland appealed.

On appeal, Breland argues that the consent order was a final determination of Breland's tax liability for the years in question, and thus collateral estoppel and res judicata barred the IRS from filing notices of deficiency for additional taxes for those years. After careful review, we hold that the consent order was not a final determination of Breland's tax liability for the years in question. Instead, the consent order merely determined the amount of taxes that the bankruptcy estate would pay but did not fix Breland's total underlying, nondischargeable tax debt nor prevent the IRS from assessing additional taxes beyond what was contemplated by the plan. Accordingly, we affirm.

## I.    Background

Two proceedings are relevant to this appeal—one in the bankruptcy court and one in the tax court. We discuss each in turn.

### A.  Bankruptcy Proceeding

On March 11, 2009, Breland filed for Chapter 11 bankruptcy in the Southern District of Alabama. *In re Breland*, No. 1:09-bk-11139 (Bankr. S.D. Ala. 2009). On April 16, 2009, the IRS filed a proof of claim, which it amended several times as to amount, claiming that Breland owed income taxes and penalties for tax years 2004 through 2008. As relevant here, the second amended proof of claim (Claim 5-3), filed March 10, 2010, was for $2,488,092.00. Breland objected on the grounds that the penalties in Claim 5-3 were unjustified because he had "reasonable cause for not paying the taxes on time." The IRS then amended its proof of claim a third time (Claim 5-4), to $2,020,697.01, and a fourth time (Claim 5-5) to $6,843,878.26.

On December 6, 2010, Breland filed a Chapter 11 Plan of Reorganization, which the IRS objected to "based in part on the ground that the plan did not provide for payment of the entire amount of taxes" the IRS claimed Breland owed.

To resolve the objection, the IRS and Breland entered into a consent order on December 17, 2010, in which the IRS withdrew Claim 5-5 and reinstated Claim 5-4, and the Chapter 11 Plan was confirmed. The Consent Order further provided that Breland would preserve his objection to the IRS's proof of claim. And, as will be discussed extensively below, Paragraph 7 of the Consent

Order stated that the IRS's right to assess taxes would be reinstated upon default by Breland:

> Upon any default under the Plan relating to the non-payment of any Administrative Expense, Priority Tax Claims or Unsecured Claim, the administrative collection powers and rights of the United States shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of Notice of Federal Tax Lien and the powers of levy, seizure, and sale under Title 26 of the United States Code.

Despite reaching agreement via consent order, the IRS continued to investigate the amount of taxes Breland owed. On October 31, 2011, the IRS sought to amend its claim to add additional taxes. The bankruptcy court denied the requested amendment.

The IRS appealed the bankruptcy court order to the United States District Court for the Southern District of Alabama. The District Court remanded the appeal to the bankruptcy court, asking the bankruptcy court whether the case was governed by *In re Gurwitch*,[1] which held that confirmation of a plan of reorganization does not fix nondischargeable tax liabilities. On remand, the Bankruptcy Court again denied the motion to amend, reasoning that this case was distinguishable from *In re Gurwitch* because *In re Gurwitch* did not involve a consent order. The IRS appealed that

---

[1] *In re Gurwitch*, 794 F.2d 584, 585–86 (11th Cir. 1986).

decision to the United States District Court for the Southern District of Alabama, and the district court affirmed. On October 7, 2016, the bankruptcy court entered an order closing the 2009 bankruptcy case.[2]

### B. Tax Court Proceeding

On June 4, 2012, while the bankruptcy case was on remand, the IRS issued a deficiency notice[3] to Breland "for taxable years 2004, 2005, and 2008." Breland commenced the instant proceeding in the tax court. He disputed the deficiencies, arguing that the amounts sought were barred by collateral estoppel and res judicata because the Consent Order from the bankruptcy proceeding was, he argued, a final determination of his tax liability for 2004–08. The case was stayed until the resolution of the 2009 bankruptcy in 2016.

After the stay was lifted in the tax court, Breland moved for summary judgment. The tax court denied Breland's motion, holding that the consent order did not bar the deficiencies. The tax court held that res judicata did not apply because "the causes of action [were] not the same." That is, this case asked the tax court to redetermine Breland's total tax liability, while the consent order

---

[2] On July 8, 2016, Breland commenced another bankruptcy proceeding, and the government filed a proof of claim for taxes and penalties. *In re Breland*, No. 1:16-bk-02272 (Bankr. S.D. Ala. 2016). But that proceeding is not at issue in the instant appeal.

[3] A deficiency is "the amount of tax imposed under the Code in excess of any amount of tax reported by the taxpayer on his return." *Shockley v. Comm'r*, 686 F.3d 1228, 1238 n.9 (11th Cir. 2012) (citing 26 U.S.C. § 6211(a)).

6                    Opinion of the Court                    23-12345

resolved the IRS's objection to a bankruptcy reorganization plan.[4] Indeed, the tax court emphasized that "[t]he facts necessary to the deficiency case before us—[Breland's] income, deductions, and credits—were not necessarily considered during the plan confirmation proceeding, which primarily addressed viability of the proposed plan of reorganization[.]"

As to collateral estoppel, the court held that the issue of Breland's total tax liability was not identical to the issue decided in the consent order. The court began by noting that certain taxes are nondischargeable and citing to caselaw for the proposition that confirmation of a plan of reorganization does not fix nondischargeable tax liabilities. The court then addressed Breland's argument that, while the taxes at issue are nondischargeable, the consent order was issued under the bankruptcy court's authority to determine taxes under 11 U.S.C. § 505. The court held that the consent order was not issued under the bankruptcy court's 11 U.S.C. § 505 authority to determine tax liability because "the consent order did not cite 11 U.S.C. sec. 505(a)(1) or otherwise state that it was issued pursuant to the bankruptcy court's authority to determine taxes under that section." It added that the consent order did not "include any

---

[4] For a similar reason, the tax court also held that the bankruptcy court's rulings as to the effect of the consent order were not binding. The tax court reasoned that "the bankruptcy court did not have the issue properly before it and could not have decided the preclusive effect of the consent order in a later Tax proceeding." Breland does not dispute this on appeal.

factual recitations" of the factors necessary to determine substantive tax liability.

Ultimately, the tax court agreed with Breland that "[i]f the consent order had fixed [Breland's] total Federal tax liability for the subject tax years, . . . then it would have preclusive effect." But the court explained that the bankruptcy court had only "resolved the amount of the IRS'[s] claim to be allowed in the plan of reorganization" and that, under the bankruptcy code and case law, allowing a claim "does not constitute a final determination of Federal tax liabilities[.]" (citing 11 U.S.C. §§ 523, 1141; *In re DePaolo*, 45 F.3d 373, 376 (10th Cir. 1995)). Thus, the Tax Court concluded the IRS was not precluded from asserting additional nondischargeable debts.

After the tax court's summary judgment ruling, the parties resolved the remaining issues by stipulation, and the tax court then entered its final order and decision. The tax court determined that Breland owed a deficiency for tax year 2004 and was owed a refund for tax year 2008. As to tax year 2005, the parties stipulated that the notice of deficiency had been issued after the statute of limitations had run, and so Breland did not owe anything for that year. Breland appealed.

## II.    Standard of Review

"[W]e review Tax Court decisions 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'" *L.V. Castle Inv. Grp., Inc. v. Comm'r Internal Rev.*, 465 F.3d 1243, 1245 (11th Cir. 2006) (quoting 26 U.S.C.

§ 7482(a)(1)).  Thus, we review the Tax Court's legal conclusions *de novo* and its factual findings for clear error.  *Feldman v. Comm'r*, 20 F.3d 1128, 1132 (11th Cir. 1994).

## III.    Discussion

On appeal, Breland argues that the consent order was a final determination of his tax liability for the years in question, and thus collateral estoppel and res judicata barred the IRS from assessing additional taxes for those years.  Additionally, Breland argues that the IRS relinquished its right to assess additional taxes because, according to Breland, the consent order stated that the IRS's right to assess taxes was prohibited unless he defaulted on the IRS's claim, which he did not do.  After careful review, we disagree with Breland and hold that the consent order was not a final determination of Breland's tax liability for the years in question.  Instead, the consent order merely determined the amount of taxes that the bankruptcy estate would pay, but it did not fix the total amount of the underlying, nondischargeable tax debt nor prevent the IRS from assessing additional taxes beyond what was contemplated by the plan.

A tax assessment is a recording of the amount a taxpayer owes the government and is "the official recording of liability that triggers levy and collection efforts."  *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).  While assessments can be made without notice, when the IRS determines that an individual underreported his income tax liability, the IRS must typically send a notice of deficiency to the individual before it can assess.    26 U.S.C. §§ 6201(a)(1), 6212.  A

23-12345          Opinion of the Court          9

deficiency is "the amount of tax imposed under the Code in excess of any amount of tax reported by the taxpayer on his return." *Shockley v. Comm'r*, 686 F.3d 1228, 1238 n.9 (11th Cir. 2012) (citing 26 U.S.C. § 6211(a)). If the taxpayer disagrees with the deficiency, he may file a petition with the Tax Court within 90 days. 26 U.S.C. § 6213(a).

While issuing a notice of deficiency and then making an assessment is the typical way the IRS collects, it is not the only way. *See Polselli v. Internal Rev. Serv.*, 598 U.S. 432, 442 (2023) ("Although an assessment may trigger levy and collection efforts, the Code does not require in all cases that the IRS make a formal assessment before attempting to collect an outstanding tax liability." (alterations adopted) (quotations omitted)). Indeed, "a taxpayer's 'liability' for unpaid taxes arises before the IRS makes an official 'assessment' of what the delinquent taxpayer owes." *Id.* The IRS can collect by accepting voluntary payments or through a judicial proceeding. *See* 26 U.S.C. § 6501(a) (recognizing the ability to bring a "proceeding in court without assessment for the collection of such tax"); *Polselli*, 598 U.S. at 442.

Bankruptcy courts also have the power to determine tax debts under 11 U.S.C. § 505, whether or not the tax was previously assessed or adjudicated. 11 U.S.C. § 505(a)(1). Determining tax debt liability under § 505 is distinct from claim allowance, and a bankruptcy court need not make a final determination under § 505 during the claim allowance process. *See In re Diaz*, 647 F.3d 1073, 1090 (11th Cir. 2011) ("[D]isallowance of a claim does not

necessarily discharge [the underlying] debt and eliminate the debtor's personal liability outside of bankruptcy." (quotations omitted)). In order to invoke § 505, typically one of the parties must "file a motion requesting that the bankruptcy court make the determination under 11 U.S.C. § 505." *In re Taylor*, 132 F.3d 256, 262 (5th Cir. 1998); *see also* Fed. R. Bankr. P. 9014(a) (noting that, for contested matters, "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought").

Unlike determinations under § 505, the claims-allowance and plan-confirmation processes do not result in a final determination of the amount of nondischargeable[5] tax debts for res judicata purposes. *See In re Gurwitch*, 794 F.2d at 585–86 (holding that the confirmation of a plan of reorganization does not fix nondischargeable tax liabilities); *In re Diaz*, 647 F.3d at 1091 (same). That is because, unless § 505 is invoked, "the only issue before the bankruptcy court at the time of the claim objection [is] the amount . . . that [will] be paid *by the bankruptcy estate* . . . not the total amount of the [underlying] debt." *In re Diaz*, 647 F.3d at 1091.

To understand this distinction, consider *In re Gurwitch*. 794 F.2d at 585–86. In that case, the IRS submitted a proof of claim, and the Chapter 11 plan was confirmed. *Id*. at 585. The IRS

---

[5] While 11 U.S.C. § 1141 provides generally that confirmation of a chapter 11 plan discharges preexisting debts, certain debts, including debts related to income taxes, are nondischargeable. *See* 11 U.S.C. §§ 1141(d)(1)(A), 1141(d)(2), 523(a)(1).

subsequently pursued additional taxes it claimed were owed for the same period. *Id.* The debtor argued that the Chapter 11 plan had fixed the amount of taxes he owed, and so any other taxes added after confirmation were barred by res judicata. *Id.* We rejected the debtor's argument, explaining that "[t]he Bankruptcy Code makes clear under 11 U.S.C. § 1141(d)(2) that the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523." *Id.* Moreover, we observed, "the Code states that these taxes are nondischargeable 'whether or not a claim for such tax was filed or allowed.'" *Id.* (quoting 11 U.S.C. § 523(a)(1)(A)); *see also In re Diaz*, 647 F.3d at 1090–92 (despite fact that bankruptcy court sustained debtor's claim-objection and reduced the amount of the allowed claim, that ruling did not constitute an adjudication of the total amount of the debt and res judicata did not prevent the relevant state agency from, post-confirmation, pursuing the remaining debts for the relevant period); *In re Fein*, 22 F.3d 631, 632 (5th Cir. 1994) (confirmation of plan did not prevent IRS from later issuing a notice of deficiency).

The Tenth Circuit has extended this holding to cases involving stipulations to debt amounts made during the claims-allowance process. *See In re DePaolo*, 45 F.3d at 374–76. In *In re DePaolo*, the IRS and debtor entered a stipulation as to the amount of the IRS's claim for "what [the IRS] believe[d] to be debtors' tax liability[.]" 45 F.3d at 374–75. After the plan was confirmed, the IRS audited the debtor and determined that the debtor owed additional taxes. *Id.* The Tenth Circuit held that "[w]hile principles of res judicata apply generally to bankruptcy proceedings, the plain

language of §§ 1141 and 523 forbid the application of those principles to the facts of this case." *Id*. at 376. And, "[b]y expressly providing that the described taxes are not discharged," the court noted that Congress determined "that the IRS may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, then audit and make additional claims for that same year, even though such conduct may seem inequitable or may impair the debtor's fresh start." *Id; but see In re Matunas,* 261 B.R. 129 (Bankr. D.N.J. 2001) (finding that stipulation entered into between IRS and debtor during claims-allowance process on amount of taxes owed constituted a determination of tax liability under 11 U.S.C. § 505 and was entitled to res judicata).

Breland does not dispute that his income tax debts are nondischargeable. Nor does Breland argue that either party filed a motion for the bankruptcy court to make a final determination of his tax liability under § 505. If these were the only facts in Breland's case, his argument would clearly be foreclosed by *In re Gurwitch* and its progeny. *See* 794 F.2d at 585–86 ("The Bankruptcy Code makes clear under 11 U.S.C. § 1141(d)(2) that the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523.").

But Breland argues his case is distinguishable because he and the IRS signed a consent order. However, the mere fact that the claim amount was stipulated to in a consent order does not bring this case outside the sweep of *In re Gurwitch* and its progeny. *See In*

*re DePaolo*, 45 F.3d at 374–75 (holding that res judicata did not prevent IRS from filing additional, post-confirmation tax claims, *despite fact that IRS and debtor had stipulated before to the amount of the tax claim*).  No matter how the claim amount was reached, unless the bankruptcy court acted under its § 505 authority, the bankruptcy court's role in the process was to determine the amount to be paid by the bankruptcy estate, not to fix the total amount of the underlying debt.  *See In re Diaz*, 647 F.3d at 1091 (noting that, at the time of the claim objection, the only issue "was the amount of . . . debt that would be paid *by the bankruptcy estate* through [the plan], not the total amount of the . . . debt").  And that determination, we have held, is not final for purposes of res judicata.  *See In re Gurwitch*, 794 F.2d at 585–86 ("[T]he confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523.").

Breland also emphasizes that the consent order here is unique because, according to Breland, "the IRS expressly gave up or relinquished its right to assess additional income taxes."  The consent order provided that "[u]pon any default under the Plan relating to the non-payment of any Administrative Expense, Priority Tax Claims or Unsecured Claim" the IRS's ability to assess taxes "shall be reinstated as they existed prior to the filing of the bankruptcy petition[.]"  Because Breland did not default, he argues that the IRS's assessment powers were never reinstated and so the IRS could not assess any additional taxes.

14                          Opinion of the Court                     23-12345

But the best reading of the consent order is not that it was a blanket prohibition on the IRS's ability to assess *additional* taxes against Breland generally. *See Pottinger v. City of Miami*, 805 F.3d 1293, 1298 (11th Cir. 2015) (noting that we apply principles of contract law to interpreting consent orders, and in doing so, we must construe them to carry out the parties' intent derived from the objective meaning of the words used). Instead, the best reading of the consent order is that it only prohibited the IRS from assessing the taxes set out in the plan. Recall that the consent order prohibited the IRS from assessing taxes unless Breland defaulted on "the plan" by not fully paying the taxes contemplated in the plan.[6] Given that the implied prohibition on assessing taxes was cabined in a paragraph relating to Breland's default on paying the taxes contemplated in the plan, the prohibition was limited to assessing the taxes contemplated in the plan. *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) (noting that traditional contract-interpretation principles require reading "the words of a contract in the context of the entire contract"). And there is no indication that the consent order was intended to apply to the IRS's ability to assess taxes not contemplated by the plan, or that the IRS forfeited its right to collect additional unpaid income taxes from the relevant years that it discovered after the plan was confirmed.

---

[6] By "taxes contemplated in the plan," we mean the taxes set out in the proof of claim agreed to in the consent order, (Claim 5-4), which was for a total of $2,020,697.01.

This reading reflects the bankruptcy code and caselaw interpreting it, which provide that unpaid income taxes are not dischargeable. *See* 11 U.S.C. §§ 1141(d)(2), 523(a)(1); *In re Gurwitch*, 794 F.2d at 585–86. And it also makes sense—the parties agreed to allow the tax claims in the stated amounts, ensured they would be fully paid, and if they were not, restored the IRS's ability to assess or collect those allowed claims. But nothing about the consent order suggests it was meant to fix Breland's total tax liability or apply to taxes outside those covered in the plan.[7]

Ultimately, because the consent order was not a final determination of Breland's tax liability for the years in question, the IRS is not barred by res judicata or collateral estoppel from filing additional notices of deficiency for those years.

**AFFIRMED.**

---

[7] Moreover, even if the consent order prohibited the IRS from *assessing* taxes against Breland as broadly as Breland asserts, the consent order says nothing about the IRS's ability to file additional *notices of deficiency* for later discovered unreported income, as was done here. A contractual restriction on an assessment is not coextensive with a restriction on filing a notice of deficiency; so, arguing that the IRS cannot file a notice of deficiency based on a contractual provision prohibiting assessment conflates those discrete actions.